# EXHIBIT 1



**Illinois Union Insurance Company**
**Chicago, Illinois**

**Healthcare Premises Pollution
Liability Insurance Policy**

### Declarations

**This Policy is issued by the stock insurance company identified above (hereinafter *the Insurer*).**

**THIS POLICY PROVIDES LIABILITY COVERAGE ON A CLAIMS-MADE AND REPORTED BASIS, WHICH COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD.  THIS POLICY PROVIDES COVERAGE FOR REMEDIATION COSTS, BUSINESS INTERRUPTION LOSS, DECONTAMINATION COSTS, CATASTROPHE MANAGEMENT COSTS AND EMERGENCY RESPONSE COSTS ON A DISCOVERED AND REPORTED BASIS, WHICH COVERS ONLY POLLUTION CONDITIONS AND FACILITY-BORNE ILLNESS EVENTS, AS APPLICABLE, FIRST DISCOVERED AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD. PLEASE READ THIS POLICY CAREFULLY. SOME OF THE PROVISIONS CONTAINED IN THIS POLICY RESTRICT COVERAGE, SPECIFY WHAT IS AND IS NOT COVERED AND DESIGNATE YOUR RIGHTS AND DUTIES.  LEGAL DEFENSE EXPENSES ARE SUBJECT TO AND SHALL ERODE THE LIMITS OF LIABILITY AND ANY APPLICABLE SELF-INSURED RETENTION.**

**THE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION, THIS POLICY, AND ANY ENDORSEMENTS OR SCHEDULES ATTACHED HERETO, CONSTITUTE THE INSURANCE POLICY.**

| Policy No.: HPI G27376939 002 | Renewal of:  HPI G27376939 001 |
|---|---|

| Item 1. | First Named Insured: | Northwell Health, Inc. |
|---|---|---|
| | Address: | Attn: Risk Management<br>200 Community Drive<br>Great Neck, New York 11021 |

<u>Coverages Purchased</u>:  **Coverage A. -** ☒  **Coverage B. -** ☒  **Coverage C. -** ☒  **Coverage D. -** ☒
**Coverage E. -** ☒  **Coverage F. -** ☒

| Item 2. | Policy Period:<br><br>(Local Time of the Address Shown in Item **1**., above.) | Policy Inception Date:<br>04/25/2017 12:01 A.M. | Policy Expiration Date:<br>04/25/2020 12:01 A.M. |
|---|---|---|---|
| Item 3. | Limits of Liability: | **a. $** 20,000,000    Per Pollution Condition or Facility-Borne Illness Event Limit of Liability<br><br>**b. $** 20,000,000   Total Policy and Program Aggregate Limit of Liability for all Pollution Conditions and Facility-Borne Illness Events | |
| Item 4. | Self-Insured  Retention / Deductible Period: | **a. $** 500,000    Per Pollution Condition or Facility-Borne Illness Event<br><br>**b.** 3  Days Per Pollution Condition | |

| Item 5. | Retroactive Date: | |
|---|---|---|
| | | Covered Operations **- 04/25/2011**<br>Non-Owned Disposal Sites **- NONE**<br>Transportation - **04/25/2011** |

| Item 6. | Premium: | $ 195,262 |
|---|---|---|
| | **Total Premium:** | $ <u>195,262</u> |
| | | (The premium shall be 25 % minimum-earned as of the first day of the Policy Period indicated in Item **2.**, above) |

**\*All dollar amounts identified above are in *United States dollars*.**

| Item 7. | Producer:<br>Name & Address | Marsh USA Inc<br>1166 Avenue Of The Americas, 24th Floor<br>New York, New York 10036 |
|---|---|---|

| Item 8. | | a. Notice of Claim or Pollution Condition | b. All other Notices |
|---|---|---|---|
| **Notices** | | Chubb Environmental Claims Manager<br>Chubb USA Claims<br>P.O. Box 5103<br>Scranton, PA 18505-0510<br>Fax:  (866) 635-5687<br><br>First Notice Fax:  (800) 951-4119<br>First Notice Email:<br><u>CasualtyRiskEnvironmentalFirstNotice@chubb.com</u> | Environmental Underwriting Officer<br>Chubb Environmental<br>P.O. Box 1000<br>436 Walnut Street – WA 07A<br>Philadelphia,  PA 19106 |
| | | **Environmental Incident Alert**<br>**24 Hour Emergency Response Hotline** | **1-888-310-9553** |

| Item 9. | Covered Locations: | Per policy form |
|---|---|---|
| | | ☐ if checked here, schedule of Covered Locations is designated via endorsement. |

**Policy Form No.**  PF-32847b (08/11) Healthcare Premises Pollution Liability Insurance Policy

**Endorsements and Notices Attached at Policy Issuance:**

| Endorsement Number: | Form Number: | Form Name: |
|---|---|---|
| 001 | PF-32936 (01/11) | Named Insureds Schedule (Broad) Endorsement |
| 002 | PF-32860 (01/11) | Aggregated SIR (Coverages A., B., C., D. and F.) Endorsement |
| 003 | PF-32875 (01/11) | Catastrophe Management Costs Sublimit Amendatory Endorsement |
| 004 | PF-32881 (01/11) | Coverage Limitation Reopener II Endorsement |
| 005 | PF-32884 (01/11) | Decontamination Costs Sublimit Endorsement |
| 006 | PF-32889 (01/11) | EIFS Coverage Endorsement |
| 007 | PF-32904 (01/11) | Extended Reporting (90 Days) Endorsement |
| 008 | PF-32920 (01/11) | Known Conditions Schedule Endorsement |
| 009 | PF-32929 (01/11) | Location-Specific New Conditions Coverage (Retro) Endorsement |
| 010 | PF-32931 (01/11) | Location-Specific Pre-Existing PCs 3rd Party Claims Coverage (Divested - Window) Endorsement |
| 011 | PF-32942 (01/11) | Notice of Cancellation (90 Days) Endorsement |
| 012 | PF-32950 (01/11) | Other Insurance (Primary - Except) Endorsement |
| 013 | PF-32953 (01/11) | Premium Earn-Out (Staggered - Multiple Years) Endorsement |
| 014 | PF-32963 (01/11) | Restoration Costs Amendatory (Green Materials) Endorsement |
| 015 | PF-32982 (01/11) | Waiver of Subrogation Endorsement |
| 016 | MANU (04/14) | Schedule Of Additional Insureds (Broad –Direct Premises) Endorsement (HC PPL) |
| 017 | MANU2 (04/14) | Fines And Penalties Amendatory Endorsement |
| 018 | MS-206198(04/17) | Mediation And Self-Insured Retention Endorsement |
| 019 | MANU 206198.2(04/17) | Asbestos And/Or Lead-Based Paint Coverage (Bodily Injury, Property Damage and Remediation Costs for Inadvertent Disturbance Only) Endorsement (HC PPL) |
| 020 | MANU 206198.3 (04/17) | Responsible Insured Amendatory Endorsement |

| Endorsement Number: | Form Number: | Form Name: |
|---|---|---|
| 021 | MANU 206198.4(04/17) | Automatic Acquisition And Due Diligence (Fungi - No Lease/Ops Due Diligence) Endorsement |
| 022 | MANU 206198.5 (04/17) | Non-Certified Acts Of Terrorism Coverage Endorsement |
| 023 | TRIA11c (01/15) | Disclosure Pursuant To Terrorism Risk Insurance Act |
| 024 | SL-34255a (01/16) | Service of Suit Endorsement |
| 025 | PF-23728a (01/15) | Terrorism Risk Insurance Act Endorsement |
| 026 | ALL-21101 (11/06) | Trade Or Economic Sanctions Endorsement |
| 027 | LD-5S23j (03/14) | Signatures |
|  | SL-24693 (12/11) | New York Surplus Lines Notification |
|  | ALL-20887 (10/06) | CHUBB Producer Compensation Practices & Policies |
|  | ILP 001 01 04 | U. S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |

**IN WITNESS WHEREOF, the Insurer has caused this Policy to be countersigned by a duly authorized representative of the Insurer.**

**DATE:**

04/25/2017
MO/DAY/YR

JOHN  J.  LUPICA,  President
AUTHORIZED REPRESENTATIVE

# CHUBB®

**Healthcare Premises Pollution
Liability Insurance Policy**

**This Policy is issued by the stock insurance company identified in the Declarations (hereinafter *the
Insurer*).**

**THIS POLICY PROVIDES LIABILITY COVERAGE ON A CLAIMS-MADE AND REPORTED BASIS, WHICH
COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE INSURER, IN
WRITING, DURING THE POLICY PERIOD.   THIS POLICY PROVIDES COVERAGE FOR REMEDIATION
COSTS, BUSINESS INTERRUPTION LOSS, DECONTAMINATION COSTS, CATASTROPHE MANAGEMENT
COSTS AND EMERGENCY RESPONSE COSTS ON A DISCOVERED AND REPORTED BASIS, WHICH
COVERS ONLY POLLUTION CONDITIONS AND FACILITY-BORNE ILLNESS EVENTS, AS APPLICABLE,
FIRST DISCOVERED AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD.
PLEASE READ THIS POLICY CAREFULLY. SOME OF THE PROVISIONS CONTAINED IN THIS POLICY
RESTRICT COVERAGE, SPECIFY WHAT IS AND IS NOT COVERED AND DESIGNATE YOUR RIGHTS AND
DUTIES.  LEGAL DEFENSE EXPENSES ARE SUBJECT TO AND SHALL ERODE THE LIMITS OF LIABILITY
AND ANY APPLICABLE SELF-INSURED RETENTION.**

Throughout this Policy the words *the Insurer* shall refer to the company providing this insurance.  Other words
and phrases that appear in quotation marks have special meanings and are defined in Section **V.,
DEFINITIONS**.

In consideration of the payment of the premium and in reliance upon all statements made in the Application to
this Policy, including the information furnished in connection therewith, and subject to all terms, definitions,
conditions, exclusions and limitations of this Policy, the Insurer agrees to provide insurance coverage to the
"insured" as described herein.

## I.   INSURING AGREEMENTS

Solely to the extent that the Coverages, below, are identified on the Declarations to this Policy as being
underwritten by the Insurer, the Insurer agrees to pay on behalf of the "insured" for:

**A.**   FIRST-PARTY REMEDIATION COSTS COVERAGE (Coverage **A.**)

"Remediation costs" and associated "legal defense expenses", in excess of the "self-insured retention",
arising out of a "pollution condition" on, at, under, or migrating from a "covered location", provided that the
"insured" first discovers such "pollution condition" during the "policy period".

The coverage afforded pursuant to this Coverage **A.** only applies to discoveries of "pollution conditions"
that are reported to the Insurer, in writing, during the "policy period".

**B.**   FIRST-PARTY EMERGENCY RESPONSE COVERAGE (Coverage **B.**)

"Emergency response costs", in excess of the "self-insured retention", arising out of a "pollution condition"
or "facility-borne illness event", provided that the "insured" first discovers such "pollution condition" or
"facility-borne illness event" during the "policy period".

The coverage afforded pursuant to this Coverage **B.** only applies to discoveries of "pollution conditions" or
"facility-borne illness events" that are reported to the Insurer, in writing, during the "policy period".

**C.**   THIRD-PARTY CLAIMS COVERAGE (Coverage **C.**)

"Claims" and associated "legal defense expenses", in excess of the "self-insured retention", arising out of
a "pollution condition", provided that the "claim" is first made against the "insured" during the "policy
period" or any applicable extended reporting period".

The coverage afforded pursuant to this Coverage **C.** only applies to "claims" that are reported to the
Insurer, in writing, during the "policy period" or any applicable "extended reporting period".

**D.**   DECONTAMINATION COSTS COVERAGE (Coverage **D.**)

"Decontamination costs" incurred by an "insured", in excess of the "self-insured retention", arising out of a "facility borne illness event", at a "covered location", provided that the "insured" first discovers such "facility borne illness event" during the "policy period".

The coverage afforded pursuant to this Coverage **D.** only applies to a "facility borne illness events" that:

**1.** Require reporting to any local, state or federal governmental agency or other agency that maintains oversight authority over the "covered location"; and

**2.** Are reported to the Insurer, in writing, during the "policy period", but in no event later than:

    **a.** Seventy-two (72) hours following the "insured's" reporting to any of the entities identified in Item **1.**, above; or

    **b.** The expiration of the "policy period",

whichever occurs first.

**E.** BUSINESS INTERRUPTION AND DELAY EXPENSE COVERAGE (Coverage **E.**)

"Business interruption loss" incurred by an "insured" during a "period of interruption" in excess of the Deductible Period identified in Item **4.b.** of the Declarations to this Policy.

The coverage afforded pursuant to this Coverage **E.** only applies to "business interruption loss" that:

**1.** Is directly attributable to a "covered pollution condition"; and

**2.** Is reported to the Insurer, in writing, as soon as practicable, and during the "policy period".

**F.** CATASTROPHE MANAGEMENT COSTS COVERAGE (Coverage **F.**)

"Catastrophe management costs", in excess of the "self-insured retention", arising out of a "catastrophe management event".  Any such "catastrophe management event" must be reported to the Insurer, in writing, during the "policy period".

The coverage afforded pursuant to this Coverage **F.** only applies to "catastrophe management events" that first commence, in their entirety, on or after the inception date identified in Item **2.** of the Declarations to this Policy

## II.   LIMITS OF LIABILITY AND SELF-INSURED RETENTION

**A.** It is expressly agreed that the Insurer's obligation to pay for any covered "claims", "remediation costs", "emergency response costs", "decontamination costs", "catastrophe management costs" or "legal defense expense" pursuant to this Policy shall attach to the Insurer only after the "first named insured" has paid, or has provided evidence to the Insurer that another "named insured" has paid, the full amount of the "self-insured retention" with respect to any covered "pollution condition" or "facility-borne illness event". Under no circumstances shall the Insurer be liable to pay any amount within the "self-insured retention". In the event that the "first named insured" cannot provide satisfactory evidence that a "named insured" has paid the full amount of the "self-insured retention" with respect to any covered "pollution condition" or "facility-borne illness event", the "first named insured" shall remain responsible to pay the "self-insured retention" before the Insurer's payment obligation pursuant to this Policy shall attach with respect to coverage sought by any "insured".

It is expressly agreed that the Insurer's obligation to pay for any covered "business interruption loss" pursuant to this Policy shall attach to the Insurer only after the relevant "insured" has itself borne the full amount of the "business interruption loss" within the Deductible Period identified in Item **4.b.** of the Declarations to this Policy.

**B.** One "self-insured retention" shall apply to all "claims", "remediation costs", "emergency response costs", "decontamination costs", "catastrophe management costs" and "legal defense expense" arising out of the same, continuous, repeated, or related "pollution condition" or "facility-borne illness event".

**C.** One Deductible Period shall apply to all "business interruption loss" arising out of the same, continuous, repeated, or related "covered pollution condition".

**D.** Subject to Subsections **F.** and **G.**, below, the most the Insurer shall pay for all "claims", "remediation costs", "business interruption loss", "catastrophe management costs", "emergency response costs" and associated "legal defense expense", arising out of the same, continuous, repeated, or related "pollution condition" or "facility-borne illness event" is the Limit of Liability identified in Item **3.a.** of the Declarations.

**E.** Subject to Subsection **D.**, above, and Subsections **F.** and **G.**, below, **$250,000** shall be the maximum amount the Insurer shall pay for all "catastrophe management costs" arising out of all "pollution conditions" and "facility-borne illness events".

**F.** The Total Policy and Program Aggregate Limit of Liability identified in Item **3.b.** of the Declarations shall be the maximum liability of the Insurer pursuant to this Policy with respect to all "claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response costs" and "legal defense expense" for all "pollution conditions" and "facility-borne illness events" covered pursuant to Coverages **A., B., C., D., E.,** and **F.,** herein, or any Supplemental Coverages added by endorsement to this Policy, if any.

**G.** If the Insurer or an affiliate has issued pollution liability coverage afforded on a discovered and reported basis or claims-made and reported basis consistent with Coverages **A., B. C. D., E.,** and **F.** herein, in one or more policy periods, and a "pollution condition" or "facility-borne illness event" is first discovered and reported to the Insurer, or a "claim" is first made and reported to the Insurer with respect to a "pollution condition" or "facility-borne illness event", in accordance with the terms and conditions of this Policy, then:

**1.** Any continuous, repeated, or related "pollution condition" or "facility-borne illness event" that is subsequently reported to the Insurer during later policy periods shall be deemed to be one "pollution condition" or "facility-borne illness event" discovered during this "policy period"; and

**2.** All "claims" seeking "bodily injury", "property damage" or "remediation costs" arising out of:

**a.** The same, continuous, repeated, or related "pollution condition" that was discovered during this "policy period"; or

**b.** The same, continuous, repeated, or related "pollution condition" that was the subject of a "claim" first made and reported during this "policy period" or any applicable "extended reporting period",

shall be deemed to have been first made and reported during this "policy period" and no other policy shall respond.

## III.   DEFENSE AND SETTLEMENT

**A.** The Insurer shall have the right and, subject to the "self-insured retention" obligation, the duty to defend the "insured" against a "claim" to which this insurance applies. The Insurer shall have no duty to defend the "insured" against any "claim" to which this insurance does not apply. The Insurer's duty to defend the "insured" ends once the Limits of Liability are exhausted or are tendered into a court of applicable jurisdiction, or once the "insured" refuses a settlement offer as provided in Subsection **E.,** below.

**B.** The Insurer shall have the right to select legal counsel to represent the "insured" for the investigation, adjustment, and defense of any "claims" covered pursuant to this Policy. Selection of legal counsel by the Insurer shall not be done without the consent of the "insured"; such consent shall not be unreasonably withheld. "Legal defense expenses" incurred prior to the selection of legal counsel by the Insurer shall not be covered pursuant to this Policy, or credited against the "self-insured retention".

In the event the "insured" is entitled by law to select independent counsel to defend itself at the Insurer's expense, the attorney fees and all other litigation expenses the Insurer shall pay to that counsel are limited to the rates the Insurer actually pays to counsel that the Insurer normally retains in the ordinary course of business when defending "claims" or lawsuits of similar complexity in the jurisdiction where the "claim" arose or is being defended. In addition, the "insured" and the Insurer agree that the Insurer may exercise the right to require that such counsel: **1)** have certain minimum qualifications with respect to their competency, including experience in defending "claims" similar to those being asserted against the "insured"; **2)** maintain suitable errors and omissions insurance coverage; **3)** be located within a reasonable proximity to the jurisdiction of the "claim"; and **4)** agree in writing to respond in a timely manner to the Insurer's requests for information regarding the "claim". The "insured" may at anytime, by

its signed consent, freely and fully waive its right to select independent counsel.

**C.** The "insured" shall have the right and the duty to retain a qualified environmental consultant or "catastrophe management firm" to: **1)** perform any investigation and/or remediation of any "pollution condition" or "facility-borne illness event" covered pursuant to this Policy; or **2)** perform "catastrophe management services" covered pursuant to this Policy, respectively.  The "insured" must receive the written consent of the Insurer prior to the selection and retention of such consultant or "catastrophe management firm", except in the event of an "emergency response".  Any costs incurred prior to such consent shall not be covered pursuant to this Policy, or credited against the "self-insured retention", except in the event of an "emergency response".

**D.** "Legal defense expenses" reduce the Limits of Liability identified in Item **3.** of the Declarations to this Policy and shall be applied to the "self-insured retention".

**E.** The Insurer shall present all settlement offers to the "insured".  If the Insurer recommends a settlement which is acceptable to a claimant, exceeds any applicable "self-insured retention", is within the Limits of Liability, and does not impose any additional unreasonable burdens on the "insured", and the "insured" refuses to consent to such settlement offer, then the Insurer's duty to defend, or indemnify the "insured" for "legal defense expense", shall end. Thereafter, the "insured" shall defend such "claim" independently and at the "insured's" own expense. The Insurer's liability shall not exceed the amount for which the "claim" could have been settled if the Insurer's recommendation had been accepted, exclusive of the "self-insured retention".

## IV.  COVERAGE TERRITORY

The coverage afforded pursuant to this Policy shall only apply to "pollution conditions" or "facility-borne illness events" located, and "claims" made, within the United States of America.

## V.  DEFINITIONS

**A.** **"Additional insured"** means any person or entity specifically endorsed onto this Policy as an "additional insured", if any.  Such "additional insured" shall maintain only those rights that are specified by endorsement to this Policy.

**B.** **"Adverse media coverage"** means national or regional news exposure in television, radio, print or internet media that is reasonably likely to have a negative impact on the "insured" with respect to its income, reputation, community relations, public confidence or good will.

**C.** **"Bodily injury"** means physical injury, illness, disease, mental anguish, emotional distress, or shock, sustained by any person, including death resulting therefrom, and any prospective medical monitoring costs that are intended to confirm any such physical injury, illness or disease.

**D.** **"Business income"** means:

**1.** Net profit or loss, before income taxes, including "rental income" from tenants, that would have been realized had there been no "business interruption";

**2.** The "insured's" continuing operating and payroll expense (excluding payroll expense of officers, executives, department managers and contract employees);

**3.** Costs incurred by the "insured" as rent for temporary premises when a portion of a "covered location" becomes untenantable due to a "covered pollution condition" and temporary premises are required to continue the "insured's" operations.  Such rental costs cannot exceed the fair rental value of the untenantable portion of the "covered location".

**E.** **"Business interruption"** means necessary partial or complete suspension of the "insured's" operations at a "covered location" arising from a "covered pollution condition".

**F.** **"Business interruption loss"** means:

**1.** "Business income";

**2.** "Extra expense; and

   **3.**  "Delay expense".

**G.**  **"Catastrophe management costs"** means reasonable and necessary expenses approved by the Insurer, in writing, except in the event of an "emergency response", which have been incurred

   **1.**  For printing, advertising, mailing of materials of public relations materials;

   **2.**  For travel by directors, officers, employees or agents of the "insured", or the "catastrophe management firm", incurred at the direction of a "catastrophe management firm";

   **3.**  To secure the scene of a "catastrophe management event"; or

   **4.**  By or advanced to third-parties directly harmed by the "catastrophe management event" for medical costs; funeral costs; psychological counseling;  travel expenses costs; temporary living costs or other necessary response costs.

**"Catastrophe management costs"** do not include any "legal defense expense".

**H.**  **"Catastrophe management event"** means a "pollution condition" or a "facility-borne illness event":

   **1.**  That first commences, in its entirety, on or after the inception date identified in the declarations of this Policy;

   **2.**  To which coverage pursuant to this Policy more generally applies; and

   **3.**  In the good faith opinion of a "key executive", has resulted in or is reasonably likely to result in "claims", "remediation costs", "decontamination costs", "business interruption loss", "emergency response" or associated "legal defense expense" that will exceed the applicable "self-insured retention", and a need for "catastrophe management services" due to "adverse media coverage".

**I.**  **"Catastrophe management firm"** means any firm that is approved, in writing, except in the event of an "emergency response", by the Insurer to perform "catastrophe management services" in connection with a "catastrophe management event".

**J.**  **"Catastrophe management services"** means advising the "insured" with respect to minimizing potential harm to the "insured" from a covered "catastrophe management event" by managing "adverse media coverage" and maintaining and restoring public confidence in the "insured", and its services or products.

**K.**  **"Certified industrial hygienist"** means a licensed professional, as established by the American Board of Industrial Hygiene, that is:

   **1.**  Mutually agreed upon by the Insurer and the "insured"; and

   **2.**  Qualified by knowledge, skill, education and training to perform an assessment of the fungal or bacterial ecology of a property, building systems and/or contents, prepare an investigation protocol, interpret the results and prepare a scope of work to remediate the site to an ordinary ambient indoor air ecology for similar indoor environments.

The Insurer may also exercise the right to require that such "certified industrial hygienist" have certain minimum qualifications with respect to their competency, including experience with similar "fungi" or *legionella pneumophila* remediation projects.

**L.**  **"Claim"** means the written assertion of a legal right received by the "insured" from a third-party, including but not limited to a "government action", suits or other actions alleging responsibility or liability on the part of the "insured" for "bodily injury", "property damage", or "remediation costs" arising out of "pollution conditions" to which this insurance applies.

**M.**  **"Covered location"** means:

   **1.**  Any location owned, operated, managed, leased or maintained by the "first named insured" or any "named insured" upon the inception date identified in Item **2.** of the Declarations to this Policy;

   **2.**  Any location that meets the prerequisites to coverage identified in the Automatic Acquisition and Due Diligence Endorsement attached to this Policy, if any; and

**3.** Any other location specifically scheduled as a "covered location" by endorsement attached to this Policy, if any.

**N.** **"Covered operations"** means any operations that are identified in the Application and any supporting documentation provided to the Insurer by the "first named insured" prior to the inception date identified in Item **2.** of the Declarations to this Policy, which are performed by or on behalf of a "named insured" outside of the physical boundaries of a "covered location".

**O.** **"Covered pollution condition"** means a "pollution condition" on, at or under a "covered location" for which coverage is otherwise afforded pursuant to this Policy pursuant to Coverages **A.** or **B.**, only, for "remediation costs" resulting from the first-party discovery of such "pollution condition". The coverage afforded pursuant to this Policy shall not apply to any "business interruption loss" arising from or related to any "pollution conditions" for which coverage for "remediation costs" resulting from the first-party discovery of such "pollution conditions" is excluded pursuant to this Policy.

**P.** **"Decontamination costs"** means reasonable and necessary expenses incurred within thirty (30) calendar days of the discovery of a "facility-borne illness event" to clean and disinfect a "covered location" due to a "facility-borne illness event" to the extent required by "environmental laws".

**"Decontamination costs"** shall also include reasonable and necessary expenses incurred by an "insured" during the "period of decontamination" due to a covered "facility-borne illness event" to remove, transport and lodge occupants in the care of the "insured" to another facility if a "responsible person" reasonably believes that such "facility-borne illness event" creates an unsafe environment for such occupants.

**Q.** **"Delay expense"** means for a "covered location" under development, where a "covered pollution condition" causes a delay in the completion or development, any of the following expenses incurred shall be afforded coverage:

**1.** Additional interest on money the "insured" has borrowed to finance the construction, development, or remediation of a project at a "covered location";

**2.** Additional realty taxes and other assessments;

**3.** Additional advertising or promotional expense;

**4.** Additional expenses incurred resulting from the renegotiation of leases, including associated usual and customary legal representation expense; and

**5.** Additional engineering, architectural, and consulting fees.

**R.** **"Emergency response"** means actions taken within seventy-two (72) hours following the discovery of a "pollution condition" or "facility-borne illness event" by an "insured" in order to abate or respond to an imminent and substantial threat to human health or the environment arising out of:

**1.** A "pollution condition" on, at, under or migrating from a "covered location";

**2.** A "pollution condition" resulting from "covered operations" or "transportation"; or

**3.** A "facility-borne illness event".

**S.** **"Emergency response costs"** means "remediation costs" or "decontamination costs, as applicable, incurred within seventy-two (72) hours following the discovery of a "pollution condition" or "facility borne illness event" by an "insured" in order to abate or respond to an imminent and substantial threat to human health or the environment arising out of:

**1.** A "pollution condition" on, at, under or migrating from a "covered location";

**2.** A "pollution condition" resulting from "covered operations" or "transportation"; or

**3.** A "facility-borne illness event".

**T.** **"Environmental indemnity obligations"** means an "insured's" obligations to defend or indemnify a third-party with respect to a "pollution condition" to which this insurance otherwise applies, provided that

such defense or indemnity obligation is explicitly included within a contract identified on the Schedule of Insured Contracts Endorsement attached to this Policy, if any.

U. **"Environmental law"** means any federal, state, commonwealth, municipal or other local law, statute, directive, ordinance, rule, guidance document, regulation, and all amendments thereto, including voluntary cleanup or risk-based corrective action guidance, governing the liability or responsibilities of the "insured" with respect to a "pollution condition" or "facility borne illness event". If no applicable laws exist governing decontamination efforts following a "facility-borne illness event", reasonable and necessary "decontamination costs" may be established in any given jurisdiction by following the Centers for Disease Control and Prevention "*Guidelines for Disinfection and Sterilization in Healthcare Facilities, 2008*".

V. **"Extended reporting period"** means the additional period of time in which to report a "claim" first made against the "insured" during or subsequent to the end of the "policy period".

W. **"Exterior Insulation and Finish System (EIFS)"** means synthetic stucco or any other exterior insulation and finish system used on any part of any building or structure and consisting of:

   1. A rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

   2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

   3. A reinforced base coat; and

   4. A finish coat providing surface texture and color.

X. **"Extra expense"** means costs incurred by the "insured" due to a "covered pollution condition", that are necessary to avoid or mitigate any "business interruption".  Such costs must be incurred to actually minimize the amount of foregone "business income" that would otherwise be covered pursuant to this Policy.

Y. **"Facility-borne illness event"** means the presence of a facility-borne infectious virus, bacteria or disease at a "covered location"; provided that such facility-borne infectious virus, bacteria or disease is not:

   1. Naturally occurring in the environment in amounts and concentrations discovered at the "covered location"; and

   2. Solely or exclusively the result of communicability through human-to-human contact.

Z. **"First named insured"** means the person or entity as identified in Item 1. of the Declarations to this Policy.  The "first named insured" is the party responsible for the payment of any premiums and the payment of, or evidencing payment of, any applicable "self-insured retention" amounts.  The "first named insured" shall also serve as the sole agent on behalf of all "insureds" with respect to the provision and receipt of notices, including notice of cancellation or non-renewal, receipt and acceptance of any endorsements or any other changes to this Policy, return of any premium, assignment of any interest pursuant to this Policy, as well as the exercise of any applicable "extended reporting period", unless any such responsibilities are otherwise designated by endorsement.

AA. **"Fungi"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents, or byproducts produced or released by "fungi".

BB. **"Government action"** means action taken or liability imposed by any federal, state, commonwealth, provincial, municipal or other local government agency or body acting pursuant to the authority of "environmental law".

CC. **"Illicit abandonment"** means:

   1. With respect to coverage for "covered locations", <u>only</u>, the intentional placement, abandonment or disposal of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including smoke, soot, vapors, fumes, acids, alkalis, chemicals, hazardous substances, hazardous materials, or waste materials, including "low-level radioactive waste", "mixed waste" and medical, red bag, infectious and pathological wastes, on, at into a "covered location", by a person or entity that:

      a. Is not an "insured";

    **b.** Is not affiliated by common ownership with an "insured", and

    **c.** Does not maintain, or has not maintained, an ownership or operational interest in the "covered location"; or,

  **2.** With respect to coverage for "transportation", <u>only</u>, the intentional placement, abandonment or disposal of any medical, red bag, infectious or pathological waste beyond the boundaries of a "covered location" during "transportation" by a person or entity that:

    **a.** Is not an "insured";

    **b.** Is not affiliated by common ownership with an "insured", and

    **c.** Does not maintain, or has not maintained, an ownership or operational interest in any "covered location".

**DD.** **"Insured"** means the "first named insured", any "named insured", any "additional insured", and any past or present director or officer of, partner in, employee of, temporary or leased worker of, or, with respect to a limited liability company, a member of, any "insured" while acting within the scope of his or her duties as such.

**EE.** **"Key executive"** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel, general partner or managing partner (if the "insured" is a partnership), managing member (if the insured is a limited liability company) or sole proprietor (if the "insured" is a sole proprietorship) of the "insured". A "key executive" also means any other person holding a title designated by the "first named insured", approved by the Insurer, and identified by endorsement to this Policy.

**FF.** **"Legal defense expense"** means reasonable legal costs, charges, and expenses, including expert charges, incurred by the "insured" in the investigation, adjustment or defense of "claims".

**GG.** **"Low-level radioactive waste"** means waste that is radioactive but not classified as the following: high-level waste (spent nuclear fuel or the highly radioactive waste produced if spent fuel is reprocessed), uranium milling residues, and waste with greater than specified quantities of elements heavier than uranium.

**HH.** **"Mixed waste"** means waste containing both radioactive and hazardous components as defined pursuant to United States law within the Atomic Energy Act and the Resource Conservation and Recovery Act, as either may be amended.

**II.** **"Named insured"** means any person or entity specifically endorsed onto this Policy as a "named insured", if any. Such "named insured" shall maintain the same rights pursuant to this Policy as the "first named insured" , except for those rights specifically reserved to the "first named insured" that are identified in Subsection **Z.**, above.

**JJ.** **"Natural resource damage"** means injury to, destruction of, or loss of, including the resulting loss of value of, fish, wildlife, biota, land, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States of America (including the resources of the fishery conservation zone established by the Magnuson-Stevens Fishery Conservation and Management Act (16 U.S.C. § 1801 et. seq.)), any state, commonwealth or local government, or any Native American Tribe or, if such resources are subject to a trust restriction on alienation, any members of any Native American Tribe, including the reasonable costs of assessing such injury, destruction or loss resulting therefrom.

**KK.** **"Non-owned disposal site"** means:

  **1.** Any disposal site or recycling facility located within the United States of America that has not at any time been owned or operated, in whole or in part, by any "insured", which receives, or has historically received, a "named insured's" waste for disposal; provided that such disposal site or recycling facility:

    **a.** Was properly permitted and licensed pursuant to "environmental laws" to accept the "named insured's" wastes at the time of such disposal by all federal, state, or other administrative or regulatory bodies or agencies with applicable jurisdiction;

   **b.** Was not owned or operated by any person, corporation or unincorporated association that was in bankruptcy at the time the "named insured's" waste was received for disposal.

   **c.** Has not, at any time prior to the inception date of this Policy, been identified on the United States EPA (CERCLA) National Priorities List, CERCLIS List or pursuant to any functional equivalent of those listings made by federal, state, or other administrative or regulatory bodies or agencies with applicable jurisdiction pursuant to "environmental laws"; and

   **d.** Was not undergoing voluntary or regulatory-required remediation activities at the time the "named insured's" waste was received for disposal; or

**2.** Any disposal site or recycling facility specifically identified on a Schedule of Non-owned Disposal Site Endorsement attached to this Policy, if any.

**LL. "Period of decontamination"** means the period of time commencing with the date that operations are necessarily suspended at a "covered location" as a result of a "facility-borne illness event" and ending when:

**1.** The subject "facility-borne illness event" has been cleaned and disinfected to the point at which the "insured's" normal operations could reasonably be restored; or

**2.** The subject "facility-borne illness event" has been cleaned and disinfected in accordance with the Centers for Disease Control and Prevention "*Guidelines for Disinfection and Sterilization in Healthcare Facilities, 2008*",

whichever occurs first.

**MM. "Period of interruption"** means the length of time commencing with the date that operations are necessarily suspended at a "covered location" as a result of "covered pollution conditions".

**NN. "Policy period"** means:

**1.** The period of time specifically identified in Item **2.** of the Declarations to this Policy;

**2.** With respect to "covered locations" added pursuant to the Automatic Acquisition and Due Diligence Endorsement attached to this Policy, if any, the period of time following the closing date of the acquisition transaction or the effective date of the lease, as applicable, through the expiration date of the Policy identified in Item **2.** of the Declarations to this Policy; or

**3.** Any shorter period resulting from the cancellation of this Policy.

**OO. "Pollution condition"** means:

**1.** The presence of "fungi" or *legionella pneumophila*;

**2.** "Illicit abandonment"; or

**3.** The discharge, dispersal, release, escape, migration, or seepage of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including smoke, soot, vapors, fumes, acids, alkalis, chemicals, hazardous substances, hazardous materials, or waste materials, on, in, into, or upon land and structures thereupon, the atmosphere, surface water, or groundwater.

For the purpose of this definition, waste materials include, but are not limited to, "low-level radioactive waste", "mixed waste" and medical, red bag, infectious or pathological wastes.

**PP. "Property damage"** means:

**1.** Physical injury to, or destruction of, tangible property of a third-party, including all resulting loss of use of that property;

**2.** Loss of use of tangible property of a third-party, that is not physically injured or destroyed;

**3.** Diminished value of tangible property owned by a third-party; or

**4.** "Natural resource damages"; or

**QQ.** **"Remediation costs"** means reasonable expenses incurred to investigate, quantify, monitor, mitigate, abate, remove, dispose, treat, neutralize, or immobilize "pollution conditions" to the extent required by "environmental laws" in the jurisdiction of such "pollution conditions". If no applicable laws exist that govern the remediation of "fungi" or legionella pneumophila in the jurisdiction of the "covered location", necessary "remediation costs" may be established by securing the written professional recommendations of a "certified industrial hygienist" retained with the prior approval of the Insurer.

**"Remediation costs"** shall also include:

**1.** Reasonable legal cost, where such cost has been incurred by an "insured" with the written consent of the Insurer; and

**2.** Reasonable expenses required to restore, repair or replace real or personal property, to substantially the same condition it was in prior to being damaged during the course of responding to a "pollution condition".

**RR.** **"Rental income"** means the actual rental fees lost as a result of a "suspension" of a rented "covered location".

**SS.** **"Responsible person"** means any employee of an "insured" responsible for environmental affairs, control, or compliance at a "covered location", and any officer or director of, or partner in, an "insured".

**TT.** **"Self-insured retention"** means the dollar amount identified in Item **4.a.** of the Declarations to this Policy, or as otherwise designated by endorsement to this Policy, if any.

**UU.** **"Suspension"** means that part of or all of a rented "covered location" is rendered untenantable for the purposes identified to the Insurer at the inception of the Policy, due to "covered pollution conditions".

**VV.** **"Terrorism"** means activities against persons, organizations or property of any nature:

**1.** That involve the following or preparation for the following:

  **a.** Use or threat of force or violence; or

  **b.** Commission or threat of a dangerous act; or

  **c.** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**2.** When one or both of the following applies:

  **a.** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to   disrupt any segment of the economy; or

  **b.** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**WW.** **"Transportation"** means the movement of the "named insured's" waste, goods or products by automobile, aircraft, watercraft, railcar or other conveyance beyond the boundaries of a "covered location" by an "insured" or any third-party vendor engaged in the business of transporting property for hire, until such time as the waste, good or product is unloaded from the automobile, aircraft, watercraft, railcar or other conveyance.

**XX.** **"Underground storage tank"** means any tank and associated piping and appurtenances connected thereto which tank has more than ten percent (10%) of its volume below ground.  "Underground storage tank" does not mean a septic tank or oil/water separator.

**YY.** **"War"** means war, whether or not declared, civil war, martial law, insurrection, revolution, invasion, bombardment or any use of military force, usurped power or confiscation, nationalization or damage of property by any government, military or other authority.

**VI.** **EXCLUSIONS**

This insurance shall not apply to:

**A. Asbestos**

"Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response costs" or "legal defense expenses", arising out of or related to asbestos or asbestos-containing materials.

This exclusion shall not apply to:

**1.** Third-party "claims" for "bodily injury", and any associated "legal defense expenses" arising out of asbestos or asbestos-containing materials;

**2.** Third-party "claims" for "property damage", and associated "legal defense expenses" arising out of asbestos or asbestos-containing materials; and

**3.** "Remediation costs" arising out of asbestos or asbestos-containing materials discovered in soil or groundwater.

**B. Contractual Liability**

"Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response costs" or "legal defense expenses" arising out of or related to liability of others assumed by an "insured" through contract or agreement, except if the liability would have attached to the "insured" in the absence of such contract or agreement.

This exclusion shall not apply to:

**1.** "Environmental indemnity obligations"; and

**2.** Liability for "pollution conditions" assumed by a "named insured" pursuant to a contract that specifically relates to "covered operations" performed by or on behalf of such "named insured", provided that any such contract was executed and effective prior to the performance of the "covered operations" that resulted in the "pollution condition".

**C. Divested Property**

"Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response costs" or "legal defense expenses" arising out of or related to a "pollution condition" or "facility-borne illness event" on, at, under or migrating from any "covered location":

**1.** That had been sold, abandoned, or given away by any "insured", or was condemned, prior to the "policy period"; or

**2.** When such "pollution condition" or "facility-borne illness event" first commenced after the "covered location" had been sold, abandoned, or given away by any "insured", or was condemned.

This exclusion shall not apply to any "pollution conditions" or "facility-borne illness event" that first commenced, in whole or in part, prior to the effective date of any such divestiture of a "covered location" that is identified on the Location-Specific Pre-Existing Pollution Conditions Third-Party Claims Coverage (Divested Properties) Endorsement attached to this Policy, if any.

**D. Employers Liability**

"Claims" or "legal defense expenses" arising out of or related to "bodily injury" to:

**1.** Any "insured" or any employee of its parent corporation, subsidiary or affiliate:

    **a.** Arising out of, or in the course of, employment by any "insured", its parent corporation, subsidiary or affiliate; or

    **b.** Performing duties related to the conduct of the business of any "insured", its parent corporation, subsidiary or affiliate.

**2.** The spouse, child, parent, brother or sister of any "insured" or employee of its parent corporation, subsidiary or affiliate as a consequence of Paragraph **1.,** above.

This exclusion applies:

1.   Whether an "insured" may be liable as an employer or in any other capacity; and

2.   To any obligation to share damages with or repay someone else who must pay damages because of such "bodily injury".

**E.   Exterior Insulation and Finish System (EIFS)**

"Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response costs" or "legal defense expenses" arising out of or related to "fungi", where such "fungi" is caused by or related to the presence or use of an "Exterior Insulation and Finish System (EIFS)", synthetic stucco, or any similar product or any part thereof, including the application or use of paints, conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a product.

**F.   Fines and Penalties**

Payment of criminal fines, criminal penalties, punitive, exemplary or multiplied damages, or any associated "claims" seeking exclusively injunctive relief in addition to such fines, penalties or damages. This exclusion also applies to any "legal defense expense" associated with such fines and penalties.

This exclusion shall not apply to punitive or exemplary damages where such coverage is insurable by law.

**G.   First-Party Property Damage**

"Claims" or "legal defense expenses" arising out of or related to damage to real or personal property owned by, leased to, loaned to, or rented by any "insured", or otherwise in the care, custody, or control of any "insured".

This exclusion shall not apply to "remediation costs" or "decontamination costs".

**H.   Fraud or Misrepresentation**

"Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response costs" or "legal defense expenses" arising out of or related to:

1.   Fraudulent acts or material misrepresentations on the part of the "first named insured" made:

    **a.**   Within the Application to this Policy; or

    **b.**   During the Application or underwriting process prior to the inception date identified in Item **2.** of the Declarations to this Policy, which would have affected the Insurer's decision to either issue this Policy, or issue this Policy and its endorsements pursuant to the financial terms identified in the Declarations to this Policy; or

2.   Fraudulent acts or material misrepresentations on the part of any "responsible person" during the "policy period".

**I.   Insured's Internal Expenses**

"Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", or "legal defense expenses" arising out of or related to expenses incurred by any "insured" for services performed by its salaried staff and any employees.

This exclusion shall not apply to "emergency response costs" or any costs, charges or expenses incurred with the prior written approval of the Insurer at its sole discretion.

**J.   Insured vs. Insured**

"Claims" made by any "insured" against any other "insured".

**K.   Intentional Non-Compliance**

"Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response costs" or "legal defense expenses" arising out of or related to the intentional disregard of, or knowing, willful, or deliberate non-compliance with, any law, statute,

regulation, administrative complaint, notice of violation, notice letter, instruction of any governmental agency or body, or executive, judicial or administrative order by any "responsible person".

**L.  Known Conditions**

"Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response costs" or "legal defense expenses" arising out of or related to "pollution conditions" or "facility-borne illness events" in existence and reported to a "responsible person":

**1.**  Prior to the "policy period"; or

**2.**  With respect to "covered location's" acquired or leased by a "named insured" during the "policy period" pursuant to an Automatic Acquisition and Due Diligence Endorsement attached to this Policy, if any, prior to the closing date of the acquisition or effective date of the lease of such "covered locations",

including any "pollution conditions" or "facility-borne illness events" discovered during the normal course of further investigation or remediation of such reported "pollution conditions" or "facility-borne illness events".

This exclusion shall not apply to:

**1.**  "Pollution conditions" or "facility-borne illness events" specifically referenced in, or identified in documents listed on, the Schedule of Known Conditions Endorsement attached to this Policy, if any; or

**2.**  "Pollution conditions" that have been reported to the "responsible person" as not being actionable pursuant to "environmental laws" in any Phase I or Phase II Environmental Site Assessment report which have been specifically prepared for a "named insured" by a qualified environmental consultant. To the extent that the qualified consultant's actionability determination is premised, in whole or in part, on the use of institutional or engineering controls in effect at a "covered location", any coverage afforded pursuant to this paragraph shall be contingent upon:

    **a.**  The continued maintenance of said engineering controls; and

    **b.**  The continued use of the property in a manner consistent with the consultant's reported assumptions,

during the "policy period".

**M.  Lead-Based Paint**

"Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response" or "legal defense expenses", arising out of or related to lead-based paint.

This exclusion shall not apply to:

**1.**  Third-party "claims" for "bodily injury", and any associated "legal defense expenses" arising out of lead-based paint;

**2.**  Third-party, non-governmental "claims" for "property damage", and any associated "legal defense expenses arising out of lead-based paint; and

**3.**  "Remediation costs" arising out of lead-based paint discovered in soil or groundwater.

**N.  Material Change in Risk**

"Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response costs" or "legal defense expenses" arising out of or related to a change in:

**1.**  Use or operations at a "covered location"; or

2.  "Covered operations" performed by or on behalf of a "named insured",

that materially increases the likelihood or severity of a "pollution condition", "facility-borne illness event" or "claim" from the intended uses or operations identified:

**1.** By the "first named insured" for the Insurer in the Application and accompanying underwriting materials provided prior to the inception date identified in Item **2.** of the Declarations to this Policy; or

**2.** With respect to "covered locations" added to the Policy pursuant to the Automatic Acquisition and Due Diligence Endorsement attached to this Policy, if any, as part of the due diligence materials and supplemental underwriting materials provided to the Insurer as part of the notice required pursuant to that endorsement.

This exclusion shall only apply to the "covered location" associated with the change in use or operations, or the modified "covered operations" at issue, and shall not limit coverage for other "covered locations" or "covered operations" to which this insurance applies.

**O. Prior Covered Operations**

"Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response costs" or "legal defense expenses" arising out of or related to "pollution conditions" resulting from "covered operations" performed by or on behalf of a "named insured" prior to the Retroactive Date identified in Items **5.** of the Declarations to this Policy.

**P. Prior Disposal**

"Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response" or "legal defense expenses" arising out of or related to:

**1.** "Pollution conditions" on, at, under or migrating from disposal sites other than "non-owned disposal sites"; or

**2.** "Pollution conditions" that are allegedly attributable to a "named insured's" waste being received at the "non-owned disposal site" prior to the Retroactive Date identified in Items **5.** of the Declarations to this Policy.

**Q. Prior Transportation**

"Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response costs" or "legal defense expenses" arising out of or related to "pollution conditions" resulting from "transportation" performed prior to the Retroactive Date identified in Items **5.** of the Declarations to this Policy.

**R. Products Liability**

"Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response costs" or "legal defense expenses" arising out of or related to any goods or products manufactured, sold, or distributed by any "insured" once possession of such goods or products have been transferred from the "insured".

This exclusion shall not apply to any coverage afforded pursuant to this policy for a "pollution condition" that first commences during "transportation".

**S. Professional Liability**

"Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response costs" or "legal defense expenses" arising out of or related to the rendering of, or failure to render, professional services, including, but not limited to, recommendations, opinions, and strategies rendered for architectural, consulting, design and engineering work, such as drawings, designs, maps, reports, surveys, change orders, plan specifications, assessment work, remedy selection, site maintenance, equipment selection, and related construction management, supervisory, inspection or engineering services.

**T. Underground Storage Tanks**

"Claims", "remediation costs", "business interruption loss" "decontamination costs", "catastrophe management costs", "emergency response costs" or "legal defense expenses" arising out of or related to "pollution conditions" emanating from an "underground storage tank" located at a "covered location", when the existence of such "underground storage tank" was known to a "responsible person" prior to the "policy period"; and

1. The "underground storage tank" is not identified on the Schedule of Insured Underground Storage Tanks Endorsement attached to this Policy, if any; or

2. The "underground storage tank" has been closed or removed, and is not identified on the Schedule of Known Conditions Endorsement attached to this Policy, if any.

**U. Vehicle Damage**

"Claims" or "legal defense expenses" for "property damage" to any automobile, aircraft, watercraft, railcar or other conveyance utilized for "transportation".

**V. War or Terrorism**

"Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response costs" or "legal defense expenses" arising out of or related to "pollution conditions" or "facility-borne illness events" attributable, whether directly or indirectly, to any acts that involve, or that involve preparation for, "war" or "terrorism" regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

**W. Workers' Compensation**

"Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response costs" or "legal defense expenses" arising out of or related to an "insured's" obligations pursuant to any workers' compensation, unemployment compensation, or disability benefits law or related laws.

## VII. REPORTING AND COOPERATION

**A.** The "insured" must see to it that the Insurer receives written notice of any "claim", "pollution condition" or "facility-borne illness event", as soon as practicable, at the address identified in Item **8.a.** of the Declarations to this Policy.  Notice should include reasonably detailed information as to:

1. The identity of the "insured", including contact information for an appropriate person to contact regarding the handling of the "claim", "pollution condition" or "facility-borne illness event";

2. The identity of the "covered location";

3. The nature of the "claim", "pollution condition" or "facility-borne illness event", and

4. Any steps undertaken by the "insured" to respond to the "claim", "pollution condition" or "facility-borne illness event".

In the event of a "pollution condition" or "facility-borne illness event", the "insured" must also take all reasonable measures to provide immediate verbal notice to the Insurer.

**B.** The "insured" must:

1. As soon as practicable, send the Insurer copies of any demands, notices, summonses or legal papers received in connection with any "claim" ;

2. Authorize the Insurer to obtain records and other information;

3. Cooperate with the Insurer in the investigation, settlement or defense of the "claim";

4. Assist the Insurer, upon the Insurer's request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of "bodily injury", "property damage",

"remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response costs", or "legal defense expense" to which this Policy may apply; and

    **5.** Provide the Insurer with such information and cooperation as it may reasonably require.

**C.** No "insured" shall make or authorize an admission of liability or attempt to settle or otherwise dispose of any "claim", without the written consent of the Insurer.  Nor shall any "insured" retain any consultants or "catastrophe management firms", or incur any "remediation costs" or "catastrophe management costs", without the prior express written consent of the Insurer, except in the event of an "emergency response".

**D.** Upon the discovery of a "pollution condition", the "insured" shall make every attempt to mitigate any loss and comply with applicable "environmental law".  The Insurer shall have the right, but not the duty, to mitigate such "pollution conditions" if, in the sole judgment of the Insurer, the "insured" fails to take reasonable steps to do so.   In that event, any "remediation costs" or "catastrophe management costs" incurred by the Insurer shall be deemed incurred by the "insured", and shall be subject to the "self-insured retention" and Limits of Liability identified in the Declarations to this Policy.

**E.** Upon the discovery of a "facility borne illness event", the "insured" shall make every attempt to mitigate any loss and comply with applicable "environmental laws".  The Insurer shall have the right, but not the duty, to mitigate such "facility borne illness events" if, in the sole judgment of the Insurer, the "insured" fails to take reasonable steps to do so.   In that event, any "decontamination costs" or "catastrophe management costs" incurred by the Insurer shall be deemed incurred by the "insured", and shall be subject to the "self-insured retention" and Limits of Liability identified in the Declarations to this Policy.

## VIII. EXTENDED REPORTING PERIOD

**A.** The "first named insured" shall be entitled to a basic "extended reporting period", and may purchase an optional supplemental "extended reporting period", following Cancellation, as described in Subsection **A.**, Paragraph **1.** of Section **IX., GENERAL CONDITIONS**, or nonrenewal.

**B.** "Extended reporting periods" shall not reinstate or increase any of the Limits of Liability.  "Extended reporting periods" shall not extend the "policy period" or change the scope of coverage provided.  A "claim " first made against an "insured" and reported to the Insurer within the basic "extended reporting period" or supplemental "extended reporting period", whichever is applicable, shall be deemed to have been made and reported on the last day of the "policy period".

**C.** Provided the "first named insured" has not purchased any other insurance to replace this Policy, the "first named insured" shall have a sixty (60) day basic "extended reporting period" without additional charge.

**D.** Provided the "first named insured" has not purchased any other insurance to replace this Policy, the "first named insured" shall also be entitled to purchase a supplemental "extended reporting period" of up to thirty-four (34) months for not more than two hundred percent (200%) of the full premium identified in Item **6.** of the Declarations to this Policy, and any additional premiums resulting from coverage added during the "policy period". Such supplemental "extended reporting period" starts when the basic "extended reporting period" ends. The Insurer shall issue an endorsement providing a supplemental "extended reporting period" provided that the "first named insured":

    **1.** Makes a written request, to the address identified in Item **8.b.** of the Declarations to this Policy, for such endorsement which the Insurer receives prior to the expiration of the "policy period"; and

    **2.** Pays the additional premium when due.  If that additional premium is paid when due, the supplemental "extended reporting period" may not be cancelled, provided that all other terms and conditions of the Policy are met.

## IX. GENERAL CONDITIONS

### A. Cancellation

    **1.** This Policy may be cancelled only by the "first named insured", or through the "first named insured's" agent, by mailing to the Insurer at the address identified in Item **8.b.** of the Declarations to this Policy, written notice stating when such cancellation shall be effective.

   **2.** This Policy may be cancelled by the Insurer for the following reasons:

   **a.** Non-payment of premium; or

   **b.** Fraud or material misrepresentation on the part of any "insured",

   by mailing to the "first named insured" at the "first named insured's" last known address, written notice stating when, not less than sixty (60) days thereafter, fifteen (15) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".

   Subparagraph **2.b.**, herein, shall apply only to that "insured" that engages in the fraud or misrepresentation. This exception shall not apply to any "insured" who is a parent corporation, subsidiary, employer of, or otherwise affiliated by ownership with, such "insured".

   **3.** In the event of cancellation, the premium percentage identified in Item **6.** of the Declarations to this Policy shall be the minimum-earned premium upon the inception date identified in Item **2.** of the Declarations to this Policy. Thereafter, the remaining unearned premium, if any, shall be deemed earned by the Insurer on a *pro rata* basis over the remainder of the "policy period". Any unearned premium amounts due the "first named insured" upon cancellation of this Policy shall be calculated on a *pro rata* basis and refunded within thirty (30) days of the effective date of cancellation.

**B. Inspection and Audit**

To the extent of the "insured's" ability to provide such access, and with reasonable notice to the "insured", the Insurer shall be permitted, but not obligated, to inspect and sample the "covered locations". The "insured" shall have the concurrent right to collect split samples. Neither the Insurer's right to make inspections, the making of said inspections, nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that such property or operations are safe or in compliance with "environmental law", or any other law.

The Insurer may examine and audit the "insured's" books and records during this "policy period" and extensions thereof and within three (3) years after the final termination of this Policy.

**C. Legal Action Against the Insurer**

No person or organization other than an "insured" has a right pursuant to this Policy:

   **1.** To join the Insurer as a party or otherwise bring the Insurer into a suit against any "insured"; or

   **2.** To sue the Insurer in connection with this insurance unless all of the Policy terms have been fully complied with.

**D. Bankruptcy**

The insolvency or bankruptcy of any "insured", or any "insured's" estate, shall not relieve the Insurer of its obligations pursuant to this Policy. However, any such insolvency or bankruptcy of the "insured", or the "insured's" estate, shall not relieve the "insured" of its "self-insured retention" obligations pursuant to this Policy. This insurance shall not replace any other insurance to which this Policy is excess, nor shall this Policy drop down to be primary, in the event of the insolvency or bankruptcy of any underlying insurer.

**E. Subrogation**

In the event of any payment pursuant to this Policy by the Insurer, the Insurer shall be subrogated to all of the rights of recovery against any person or organization, and the "insured" shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. All "insureds" shall do nothing to prejudice such rights. Any recovery as a result of subrogation proceedings arising pursuant to this Policy shall accrue first to the "insureds" to the extent of any payments in excess of the limit of coverage; then to the Insurer to the extent of its payment pursuant to the Policy; and then to the "insured" to the extent of the "self-insured retention". Expenses incurred in such subrogation proceedings shall be apportioned among the interested parties in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery.

**F.   Representations**

By accepting this Policy, the "first named insured" agrees that:

**1.**   The statements in the Declarations, schedules and endorsements to, and Application for, this Policy are accurate and complete;

**2.**   Those statements and representations constitute warranties that the "first named insured" made to the Insurer; and

**3.**   This Policy has been issued in reliance upon the "first named insured's" warranties.

**G.   Separation of Insureds**

Except with respect to the Limits of Liability, Cancellation condition **2.a.**, above, the Fraud or Misrepresentation Exclusion, the Insured vs. Insured Exclusion, the Intentional Non-Compliance Exclusion, the Known Conditions Exclusion, the Material Change in Risk Exclusion, the Underground Storage Tanks Exclusion, and any obligations specifically assigned to the "first named insured", this Policy applies:

**1.**   As if each "named insured" were the only "insured"; and

**2.**   Separately to each "named insured" against whom a "claim" is made.

**H.   Other Insurance**

If other valid and collectible insurance is available to any "insured" covering a loss also covered by this Policy, other than a policy that is specifically written to apply in excess of this Policy, the insurance afforded by this Policy shall apply in excess of and shall not contribute with such other insurance.

**I.   Jurisdiction and Venue**

It is agreed that in the event of the failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer and the "insured" shall submit to the exclusive jurisdiction of the State of New York and shall comply with all requirements necessary to give such court jurisdiction.  Nothing in this clause constitutes or should be understood to constitute a waiver of the Insurer's right to remove an action to a United States District Court.

**J.   Choice of Law**

All matters arising hereunder, including questions relating to the validity, interpretation, performance, and enforcement of this Policy, and the rights, duties and obligations hereunder, shall be determined in accordance with the law and practices of the State of New York.

**K.   Changes and Assignment**

Notice to or knowledge possessed by any person shall not effect waiver or change in any part of this Policy or estop the Insurer from asserting any right pursuant to the terms of this Policy. The terms, definitions, conditions, exclusions and limitations of this Policy shall not be waived or changed, and no assignment of any interest in this Policy shall bind the Insurer, except as provided by endorsement and attached to this Policy.

**L.   Headings**

The descriptions in the headings and sub-headings of this Policy are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

**M.   Consent**

Where the consent of the Insurer, or an "insured", is required pursuant to this Policy, such consent shall not be unreasonably withheld, delayed, conditioned, or denied.

## SCHEDULE OF NAMED INSUREDS (BROAD – MAJORITY OWNED CHAIN) ENDORSEMENT (HC PPL)

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>001 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

**I.**   The persons or entities within the scope of the description contained in the Schedule of Named Insureds, below, are "named insureds" pursuant to this Policy.

#### Schedule of Named Insureds

**1.**   All corporations, limited partnerships, limited liability partnerships, limited liability companies or other business entities or associations, other than joint ventures and general partnerships, as now or may hereafter exist during the "policy period", in which the "first named insured", itself, or through a direct chain of underlying majority-owned operating subsidiary corporations, limited partnerships, limited liability partnerships, or limited liability companies, maintains at least a fifty percent (50%) ownership interest (hereinafter Majority-Owned Affiliates); and

**2.**   All joint ventures or general partnerships, as now or may hereafter exist during the "policy period", to which the "first named insured", itself, or one of its Majority-Owned Affiliates, is a party and maintains at least a fifty percent (50%) ownership interest, but only to the extent of the "first named insured's" or Majority-Owned Affiliates' legal responsibility for the liabilities of such joint venture or general partnership.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

## AGGREGATED SELF-INSURED RETENTION (COVERAGES A., B., C., D. AND F.) ENDORSEMENT (HC PPL)

| Named Insured | | | | Endorsement Number |
|---|---|---|---|---|
| Northwell Health, Inc. | | | | 002 |

| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
|---|---|---|---|---|
| HPI | G27376939 002 | 04/25/2017  to  04/25/2020 | | 04/25/2017 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

**I.**  Notwithstanding anything identified in Item **4.a.** of the Declarations to this Policy that might be construed to the contrary, and solely with respect to coverage pursuant to Section **I.**, **INSURING AGREEMENTS**, Subsection **A.**, FIRST-PARTY REMEDIATION COSTS COVERAGE, Subsection **B.**, FIRST-PARTY EMERGENCY RESPONSE COVERAGE, Subsection **C.**, THIRD-PARTY CLAIMS COVERAGE, Subsection **D.**, DECONTAMINATION COSTS COVERAGE, and Subsection **F.**, CATASTROPHE MANAGEMENT COSTS COVERAGE, of this Policy, Item **4.a.**, **Self-Insured Retention**, of the Declarations is hereby deleted in its entirety and replaced with the following:

The "self-insured retentions" applicable to this coverage part shall be as follows:

   **i.**  $ 500,000   Per Pollution Condition retention or Facility-Borne Illness Event; and

   **ii.**  $ 2,000,000   Aggregate retention for all Pollution Conditions and Facility-Borne Illness Events

   **iii.**  $ 50,000   Maintenance retention per Pollution Condition or Facility-Borne Illness Event thereafter.

**II.**  Solely with respect to coverage pursuant to Section **I.**, **INSURING AGREEMENTS**, Subsection **A.**, FIRST-PARTY REMEDIATION COSTS COVERAGE, Subsection **B.**, FIRST-PARTY EMERGENCY RESPONSE COVERAGE, Subsection **C.**, THIRD-PARTY CLAIMS COVERAGE, Subsection **D.**, DECONTAMINATION COSTS COVERAGE, and Subsection **F.**, CATASTROPHE MANAGEMENT COSTS COVERAGE, of this Policy, Section **II.**, **LIMITS OF LIABILITY AND SELF-INSURED RETENTION**, Subsection **B.**, of this Policy is hereby deleted in its entirety and replaced with the following:

   **B.**  One "self-insured retention" shall apply to all "claims", "remediation costs", "emergency response costs", "decontamination costs", "catastrophe management costs" and associated "legal defense expense" arising from the same, continuous, repeated, or related "pollution condition" or "facility-borne illness event".  Upon exhaustion of the Aggregate "self-Insured retention" amount identified in Item **4.a.ii.** of the Declarations, by approved payments made pursuant to multiple "self-insured retentions" applicable to multiple "pollution conditions" or "facility-borne illness events" to which this insurance applies, all ongoing and future "claims", "remediation costs", "emergency response costs", "decontamination costs", "catastrophe management costs" and associated "legal defense expense", attributable to both outstanding and newly discovered "pollution conditions" or "facility-borne illness events", if any, shall be subject to the Maintenance "self-insured retention" amount identified in Item **4.a.iii.** of the Declarations.  With respect to any ongoing "claims", "remediation costs", "emergency response costs", "decontamination costs", "catastrophe management costs" and associated "legal defense expense" attributable to an outstanding "pollution condition" or "facility-borne illness event" that has been reported to the Insurer prior to exhaustion of the Aggregate "self-insured retention", if approved payments for "claims", "remediation costs", "emergency response costs", "decontamination costs", "catastrophe management costs" and

associated "legal defense expense" in an amount equal to or in excess of the Maintenance "self-insured retention", then the "named insureds" shall have no further "self-insured retention" obligation with respect to that specific "pollution condition" or "facility-borne illness event". Notwithstanding any other provision in this Policy to the contrary, under no circumstances shall the Insurer be liable to pay any amount pursuant to this Policy until the "named insureds" have paid the full amount of the "self-insured retention", or, in the event of exhaustion, discussed above, the Maintenance "self-insured retention", with respect to each "pollution condition" or "facility-borne illness event".

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

## CATASTROPHE MANAGEMENT COSTS SUBLIMIT AMENDATORY ENDORSEMENT
## (HC PPL)

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>003 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **II., LIMITS OF LIABILITY AND SELF-INSURED RETENTION**, Subsection **E.**, of this Policy is hereby deleted in its entirety and replaced with the following:

**E.**  Subject to Subsection **D.**, above, and Subsections **F.** and **G.**, below, **$** 500,000  shall be the maximum amount the Insurer shall pay for all "catastrophe management costs" arising out of all "pollution conditions" and "facility-borne illness events".

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

## COVERAGE LIMITATION AND REOPENER ENDORSEMENT (HC PPL)

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Northwell Health, Inc. | | | 004 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| HPI | G27376939 002 | 04/25/2017 to 04/25/2020 | 04/25/2017 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

**I.** COVERAGE LIMITATION:

- [X] "business interruption loss"; *
- [ ] "diminution in value"; *
- [ ] "rental income"; *
- [X] "catastrophe management costs"; *
- [X] "emergency response costs"*;
- [X] "remediation costs"*;
- [ ] "property damage"*;
- [ ] "bodily injury*",

>    *to the extent applicable due to the fact that such coverages are identified as being provided pursuant to the Declarations, or, alternatively, are added to this Policy by endorsement hereto.

Coverage is not afforded pursuant to this Policy for any of the exposures indicated above, including any associated "legal defense expenses", with respect to those specific "pollution conditions" identified in the Schedule of Limited Coverage, below.

**II.** RE-OPENER OF COVERAGE:

In the event that "closure" is achieved with respect any of the "pollution conditions" identified in Schedule of Limited Coverage, below, then coverage limitations set forth in Section **I.,** above, may be deleted with respect to the specific "pollution condition" that achieves such "closure". The coverage limitations identified in Section **I.,** above, can only be deleted by endorsement to this Policy issued by the Insurer.

**III.** For the purposes of this Endorsement, "closure" shall mean that the "insured" obtains a written No Further Action determination, or otherwise achieves closure in accordance with "environmental laws" applicable to the subject "pollution conditions", which has been confirmed in writing by the regulatory agency or authority with jurisdiction over the "pollution conditions".

If such "closure" is contingent upon: **1)** certain additional actions with respect to the subject "pollution conditions" in order to be effective; or **2)** on the use of institutional or engineering controls in effect at a "covered location", then any such additional actions must be completed in order for coverage to be effective pursuant to this Endorsement, and such coverage shall be contingent upon the continued maintenance of said engineering controls and the continued use of the "covered location" in a manner consistent with said institutional controls, as applicable, during the "policy period" or any "extended reporting period".

## <u>SCHEDULE OF LIMITED COVERAGE</u>

1. Petroleum hydrocarbons, volatile organic compounds (VOCs), semi-volatile organic compounds (SVOCs), or any degradation compounds thereof in soil or groundwater on, at, under, or migrating from the Peconic Bay Medical Center, 1300 Roanoke Ave, Riverhead, NY 11901 "covered location"

2. Fungi on, at, under, or migrating from the Peconic Bay Medical Center, 1300 Roanoke Ave, Riverhead, NY 11901 "covered location"

3. Petroleum hydrocarbons or any degradation compounds thereof in groundwater associated with the fuel leak at the 40 Moore Avenue, Mount Kisco, New York "covered location" as referenced in the Phase I Environmental Site Assessment Report, Northern Westchester Hospital, 400 East Main Street, Mount Kisco, New York prepared by HDR/LMS and dated September 2005

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

## DECONTAMINATION COSTS SUBLIMIT ENDORSEMENT (HC PPL)

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>005 |
| --- | --- | --- | --- |
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017 to 04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

> $ 20,000,000  Decontamination Costs Aggregate Sublimit of Liability for all Facility-Borne Illness Events

The Decontamination Costs Aggregate Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "decontamination costs" resulting from all "facility-borne illness events" to which this insurance applies.  This Aggregate Sublimit of Liability shall be subject to the Limits of Liability identified in the Declarations to this Policy.  Under no circumstance shall the Insurer be liable to pay any amount in excess of any applicable Limit of Liability.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

## EXTERIOR INSULATION AND FINISH SYSTEM COVERAGE ENDORSEMENT (HC PPL)

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>006 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **VI.**, **EXCLUSIONS**, Subsection **E.**, **Exterior Insulation and Finish System (EIFS)**, of this Policy is hereby deleted in its entirety.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

## BASIC EXTENDED REPORTING PERIOD (90 DAYS) ENDORSEMENT (HC PPL)

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>007 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **VIII.**, **EXTENDED REPORTING PERIOD**, Subsections **C.** and **D.**, of this Policy are hereby deleted in their entirety and replaced with the following:

**C.** Provided the "first named insured" has not purchased any other insurance to replace this Policy, the "first named insured" shall have a ninety (90) day basic "extended reporting period" without additional charge.

**D.** Provided the "first named insured" has not purchased any other insurance to replace this Policy, the "first named insured" shall also be entitled to purchase a supplemental "extended reporting period" of up to thirty-three (33) months for not more than two hundred percent (200%) of the full premium identified in Item **6.** of the Declarations to this Policy, and any additional premiums resulting from coverage added during the "policy period". Such supplemental "extended reporting period" starts when the basic "extended reporting period" ends. The Insurer shall issue an endorsement providing a supplemental "extended reporting period" provided that the "first named insured":

    **1.** Makes a written request, to the address identified in Item **8.b.** of the Declarations to this Policy, for such endorsement which the Insurer receives prior to the expiration of the "policy period"; and

    **2.** Pays the additional premium when due.  If that additional premium is paid when due, the supplemental "extended reporting period" may not be cancelled, provided that all other terms and conditions of the Policy are met.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# SCHEDULE OF KNOWN CONDITIONS (DOCUMENTS) ENDORSEMENT
## (HC PPL)

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>008 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree that the "pollution conditions" identified within the documents listed in the Schedule of Known Conditions (Documents), below, have been disclosed to the Insurer prior to the inception of this Policy:

### SCHEDULE OF KNOWN CONDITIONS (Documents)

1. Phase I Environmental Assessment, South Campus, Staten Island University Hospital, prepared by AKRF Inc. and dated March 1994

2. Phase I Environmental Site Assessment, Staten Island University Hospital prepared by IT and dated April 12, 2000

3. Phase I Environmental Site Assessment, 270-05 76th Avenue, New Hyde Park, NY prepared by P.W. Grosser Consulting, Inc. and dated June 2008

4. Phase I Environmental Site Assessment Report, Northern Westchester Hospital, 400 East Main Street, Mount Kisco, New York prepared by HDR/LMS and dated September 2005

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

## LOCATION-SPECIFIC NEW CONDITIONS COVERAGE (RETROACTIVE DATE) ENDORSEMENT (HC PPL)

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>009 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Solely with respect to "pollution conditions" on, at, under or migrating from "covered locations" specifically identified on the  Schedule of Covered Locations, below, Section **I., INSURING AGREEMENTS**, Coverages **A., B.** and **C.**, of this Policy are hereby deleted in their entirety and replaced with the following:

**A.** FIRST-PARTY REMEDIATION COSTS COVERAGE (Coverage **A.**)

"Remediation costs" and associated "legal defense expenses", in excess of the "self-insured retention", arising out of a "pollution condition" on, at, under, or migrating from a "covered location", provided the "insured" first discovers such "pollution condition" during the "policy period".  Any such discovery of a pollution condition must be reported to the Insurer, in writing, during the "policy period".

The coverage afforded under this Coverage **A.** only applies to "pollution conditions" that first commence, in their entirety:

**1.** During the "policy period"; or,

**2.** If prior to the "policy period, then on or after the Retroactive Date identified in the Location-Specific New Conditions Coverage (Retroactive Date) Endorsement attached to this Policy.

**B.** FIRST-PARTY EMERGENCY RESPONSE COVERAGE (Coverage **B.**)

"Emergency response costs", in excess of the "self-insured retention", arising out of:

**1.** A "pollution condition" on, at, under or migrating from a "covered location"; or

**2.** A "facility-borne illness event",

provided that the "insured" first discovers such "pollution condition" or "facility borne illness event" during the "policy period".  Any such discovery of a "pollution condition" or "facility borne illness event" must be reported to the Insurer, in writing, during the "policy period".

The coverage afforded under this Coverage **B.** only applies to "pollution conditions" or "facility borne illness events" that first commence, in their entirety:

**1.** During the "policy period"; or,

**2.** If prior to the "policy period, then on or after the Retroactive Date identified in the Location-Specific New Conditions Coverage (Retroactive Date) Endorsement attached to this Policy.

**C.** THIRD-PARTY CLAIMS COVERAGE (Coverage **C.**)

"Claims" and associated "legal defense expenses", in excess of the "self-insured retention", arising out of a "pollution condition" on, at, under or migrating from a "covered location", provided the "claim" is first made during the "policy period".  Any such "claim" must be reported to the Insurer, in writing, during the "policy period" or any applicable "extended reporting period".

The coverage afforded under this Coverage **C.** only applies to "pollution conditions" that first commence, in their entirety:

**1.** During the "policy period"; or,

**2.** If prior to the "policy period, then on or after the Retroactive Date identified in the Location-Specific New Conditions Coverage (Retroactive Date) Endorsement attached to this Policy.

**Schedule of Covered Locations**

| | *Covered Location* | *Retroactive Date* |
|---|---|---|
| **1.** | Phelps Professional Building/Medical Office Building at 777, 777 North Broadway, Sleepy Hollow, New York 10591 | 12/31/2014 |
| **2.** | Phelps Memorial Hospital Center, 701 North Broadway, Sleepy Hollow, New York 10591 | 12/31/2014 |
| **3.** | Phelps Child Care Center, Inc. (Robin's Nest), 3 Phelps Lane, Sleepy Hollow, New York 10591 | 12/31/2014 |
| **4.** | The James House, 701 North Broadway, Sleepy Hollow, New York 10591 | 12/31/2014 |
| **5.** | MRI, 707 North Broadway, Sleepy Hollow, New York 10591 | 12/31/2014 |
| **6.** | The Medical Service Building, 755 North Broadway, Sleepy Hollow, New York 10591 | 12/31/2014 |
| **7.** | Parking Garage, 733 North Broadway, Sleepy Hollow, New York 10591 | 12/31/2014 |
| **8.** | The Employee Residence, One Phelps Lane, Sleepy Hollow, New York 10591 | 12/31/2014 |
| **9.** | Engineering Building # 9, 701 North Broadway, Sleepy Hollow, New York 10591 | 12/31/2014 |
| **10.** | Mental Health Services –Continuing Treatment & Supportive Case Management, 315 South Highland Avenue, Briarcliff Manor, New York 10510 | 12/31/2014 |
| **11.** | Alcohol Treatment Center, 22 Rockledge Avenue, Ossining, New York 10562 | 12/31/2014 |
| **12.** | Cherry Door Thrift Shop (Run by Phelps Gift Shop), 36 Main Street, Tarrytown, New York 1059l | 12/31/2014 |
| **13.** | Heritage Medical Group at Phelps (Two Locations), 362 North Broadway, 2nd Fl, Sleepy Hollow, NY 10591 | 12/31/2014 |
| **14.** | Ossining Internal Medicine , 100 South Highland Avenue, Suite #5, Ossining, NY 10562 | 12/31/2014 |
| **15.** | Croton Medical Group, 440 South Riverside Avenue, Croton-on-Hudson, NY 10520 | 12/31/2014 |
| **16.** | Dobbs Ferry Medical Group, 18 Ashford Avenue, Dobbs Ferry, NY 10522 | 12/31/2014 |
| **17.** | PHELPS ACCOUNTING , 47 Hudson Street, | 12/31/2014 |

|  |  |  |
|---|---|---|
|  | Ossining, NY 10562 |  |
| **18.** | Hospital, 480 Bedford Road, Chappaqua, NY | 12/31/2014 |
| **19.** | Office/Medical, 34 South Bedford Road, Mount Kisco, NY 10549 | 12/31/2014 |
| **20.** | Residence, 31 Boltis St, Mount Kisco, NY | 12/31/2014 |
| **21.** | Medical office, 2013 Crompond Road, Yorktown, NY 10598 | 12/31/2014 |
| **22.** | Medical office, 343 Route 292, Somers, NY | 12/31/2014 |
| **23.** | Medical office, 645 Mable Ave, Thornwood, NY | 12/31/2014 |
| **24.** | Medical office, 3010 Westchester Ave Suite 201, Purchase, New York 10577 | 12/31/2014 |
| **25.** | Medical office, 1940 Commerce Street , Yorktown, NY 10597 | 12/31/2014 |
| **26.** | Medical office, Yorktown Imaging, 1940 Commerce Street , Yorktown, NY 10598 | 12/31/2014 |

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

## LOCATION-SPECIFIC PRE-EXISTING POLLUTION CONDITIONS THIRD-PARTY CLAIMS COVERAGE (DIVESTED PROPERTIES - WINDOW) ENDORSEMENT (HC PPL)

| Named Insured<br>Northwell Health, Inc. | Endorsement Number<br>010 |
|---|---|

| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
|---|---|---|---|

| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company |
|---|

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Coverage is afforded pursuant to Coverage **C.** of this Policy, **only**, with respect to the "covered locations" identified in the Schedule of Covered Locations (Divested Locations), below.  Further, with respect to the "covered locations" identified in the Schedule of Covered Locations (Divested Locations), below, Coverage **C.**, of this Policy is hereby deleted in its entirety and replaced with the following:

**C.**  THIRD-PARTY CLAIMS COVERAGE (Coverage **C.**)

"Claims" and associated "legal defense expenses", in excess of the "self-insured retention", arising out of a "pollution condition" on, at, under, or migrating from a "covered location", provided the "claim" is first made during the "policy period".  Any such "claim" must be reported to the Insurer, in writing, during the "policy period" or any applicable "extended reporting period".

The coverage afforded pursuant to this Coverage **C.** only applies to "pollution conditions" that first commence, in their entirety:

**1.**  On or after Retroactive Date identified in the Schedule of Covered Locations (Divested Locations), below; and

**2.**  Prior to the Divestiture Date identified in the Schedule of Covered Locations (Divested Locations), below.

### Schedule of Covered Locations (Divested Locations)

| *Location* | *Retroactive Date* | *Divestiture Date* |
|---|---|---|
| Any Location leased by a "named insured" | **Date of first continuous lease of such location by a "named insured"** | **Date, prior to the inception date of this policy, of termination of a continuous lease of such location by a "named insured"** |

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

## NOTICE OF CANCELLATION (120 DAYS) ENDORSEMENT (HC PPL)

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>011 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **IX.**, **GENERAL CONDITIONS**, Subsection **A.**, **Cancellation**, Paragraph **2.**, of this Policy is hereby deleted in its entirety and replaced with the following:

**2.** This Policy may be cancelled by the Insurer for the following reasons:

**a.** Non-payment of premium; or

**b.** Fraud or material misrepresentation on the part of any "insured",

by mailing to the "first named insured" at the "first named insured's" last known address, written notice stating when, not less than one hundred and twenty (120) days thereafter, fifteen (15) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".

Subparagraph **2.b.**, herein, shall apply only to that "insured" that engages in the fraud or misrepresentation.   This exception shall not apply to any "insured" who is a parent corporation, subsidiary, employer of, or otherwise affiliated by ownership with, such "insured".

All other terms and conditions of the Policy remain unchanged.

_____
Authorized Representative

## OTHER INSURANCE (PRIMARY – EXCEPT) ENDORSEMENT (HC PPL)

| Named Insured<br>Northwell Health, Inc. | Endorsement Number<br>012 |
|---|---|

| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
|---|---|---|---|

| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company |
|---|

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **IX.**, **GENERAL CONDITIONS**, Subsection **H.**, **Other Insurance**, of this Policy is hereby deleted in its entirety and replaced with the following:

**H.  Other Insurance**

If other valid and collectible insurance is available to an "insured" covering a loss also covered by this Policy, the insurance afforded by this Policy shall apply as primary insurance except for loss covered pursuant to Chubb policy number 37313243, Great American policy number PRE 4038787 00, or any subsequent renewals. Therefore, this Policy shall apply in excess of and shall not contribute with Chubb policy number 37313243, Great American policy number PRE 4038787 00, or any subsequent renewals.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

## PREMIUM EARN-OUT (STAGGERED – MULTIPLE YEARS) ENDORSEMENT (HC PPL)

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>013 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **IX., GENERAL CONDITIONS,** Subsection **A., Cancellation,** Paragraph **3.,** of this Policy is hereby deleted in its entirety and replaced with the following:

**3.** In the event of cancellation,twenty-five  percent (25 %) of the premium identified in Item **6.** of the Declarations shall be minimum earned upon the inception date identified in Item **2.** of the Declarations.  Thereafter, an additional twenty-five  percent (25 %) of the premium shall be deemed earned by the Insurer on a *pro rata* basis over the first year of the "policy period". Thereafter, the remaining unearned premium shall be deemed earned by the Insurer on a *pro rata* basis over the remaining policy term.  Any unearned premium amounts due the "first named insured" upon cancellation of this Policy during the "policy period", if any, shall be calculated on a *pro rata* basis and refunded within thirty (30) days of the effective date of such cancellation.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

## RESTORATION COSTS AMENDATORY (GREEN MATERIALS) ENDORSEMENT (HC PPL)

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>014 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **V., DEFINITIONS**, Subsection **QQ.**, of this Policy is hereby deleted in its entirety and replaced with the following:

**QQ.** **"Remediation costs"** means reasonable expenses incurred to investigate, quantify, monitor, mitigate, abate, remove, dispose, treat, neutralize, or immobilize "pollution conditions" to the extent required by "environmental law" in the jurisdiction of such "pollution conditions". If no applicable laws exist that govern the remediation of "fungi" or *legionella pneumophila* in the jurisdiction of the "covered location", necessary "remediation costs" may be established by securing the written professional recommendations of a "certified industrial hygienist" retained with the prior approval of the Insurer.

**"Remediation costs"** shall also include:

1. Reasonable legal cost, where such cost has been incurred by an "insured" with the written consent of the Insurer; and

2. Reasonable expenses required to restore, repair or replace real or personal property to substantially the same condition it was in prior to being damaged during the course of responding to a "pollution condition". Such expenses shall not include costs associated with betterments or improvements, except to the extent that such betterments or improvements are exclusively associated with the use of building materials which are environmentally superior to those materials which comprised the original damaged property. Any such environmentally superior material must be: **a)** certified as such by an applicable independent certifying institution, where such certification is available; or **b)** in the absence of any such certification, based solely on the judgment of the Insurer and at its discretion.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

## WAIVER OF SUBROGATION ENDORSEMENT (HC PPL)

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>015 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **IX.**, **GENERAL CONDITIONS**, Subsection **E.**, **Subrogation**, of this Policy is hereby deleted in its entirety and replaced with the following:

**E.  Subrogation**

In the event of any payment pursuant to this Policy by the Insurer, the Insurer shall be subrogated to all of the rights of recovery against any person or organization, and the "insured" shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.  All "insureds" shall do nothing to prejudice such rights. Any recovery as a result of subrogation proceedings arising pursuant to this Policy shall accrue first to the "insureds" to the extent of any payments in excess of the limit of coverage; then to the Insurer to the extent of its payment pursuant to the Policy; and then to the "insured" to the extent of the "self-insured retention". Expenses incurred in such subrogation proceedings shall be apportioned among the interested parties in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery.

Notwithstanding the foregoing, the Insurer hereby waives its rights to subrogate against the entities identified below:

1.  Any counterparties of a "named insured" where required by written contract executed prior to the relevant "claim" or "pollution condition" to which this insurance applies

All other terms and conditions of this Policy remain unchanged.

<br><br>

_____
Authorized Representative

## SCHEDULE OF ADDITIONAL INSUREDS (BROAD -DIRECT PREMISES) ENDORSEMENT
## (HC PPL)

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>016 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

The persons or entities within the scope of the description contained in the Schedule of Additional Insureds, below, are "additional insureds" pursuant to this Policy, but solely with respect to: **1)** their liability for any "named insured's" direct liability arising out of a "pollution condition" to which this insurance applies, generally; or **2)** their own, direct liability arising out of a "pollution condition" on, at, under, or migrating from a "covered location".

### Schedule of Additional Insureds

1. All corporations, limited partnerships, limited liability partnerships, limited liability companies or other business entities or associations, other than joint ventures and general partnerships, as now or may hereinafter exist during the "policy period", in which a "named insured" maintains an ownership interest; and

2. All joint ventures or general partnerships, as now or may hereafter exist during the "policy period", to which a "named insured" is a party, as now or may hereinafter exist during the "policy period", but only to the extent of the "named insured's" legal responsibility for the liability of such joint venture or general partnership.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

MANU  (04/14)                                                                                    Page 1 of 1

## FINES AND PENALTIES AMENDATORY ENDORSEMENT

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>017 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **VI., EXCLUSION**, Subsection **F.**, of this Policy is hereby deleted in its entirety and replaced with the following:

**F.   Criminal Fines and Criminal Penalties**

The payment of criminal fines or criminal penalties, or any associated "claims" seeking exclusively injunctive relief in addition to such criminal fines or criminal penalties.  This exclusion also applies to any "legal defense expense" associated with such criminal fines and criminal penalties.

This exclusion shall not apply to punitive or exemplary damages where such coverage is insurable by law and directly attributable to **"bodily injury"**, **"property damage"** or "remediation costs" resulting from a "pollution condition" to which this insurance otherwise applies.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

MANU2  (04/14)                                                                 Page 1 of 1

## MEDIATION AND SELF-INSURED RETENTION ENDORSEMENT

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>018 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

**I.**     Section **II., LIMITS OF LIABILITY AND SELF-INSURED RETENTION,** Subsection **A.** of this Policy is hereby deleted and replaced with the following:

**II.   LIMITS OF LIABILITY AND SELF-INSURED RETENTION**

**A.**   It is expressly agreed that the Insurer's obligation to pay for any covered "claims", "remediation costs", "emergency response costs", "decontamination costs", "catastrophe management costs" or "legal defense expense" pursuant to this Policy shall attach to the Insurer only after the "first named insured" has paid, or has provided evidence to the Insurer that another "named insured" has paid, the full amount of the "self-insured retention" with respect to any covered "pollution condition" or "facility-borne illness event". Under no circumstances shall the Insurer be liable to pay any amount within the "self-insured retention". In the event that the "first named insured" cannot provide satisfactory evidence that a "named insured" has paid the full amount of the "self-insured retention" with respect to any covered "pollution condition" or "facility-borne illness event", the "first named insured" shall remain responsible to pay the "self-insured retention" before the Insurer's payment obligation pursuant to this Policy shall attach with respect to coverage sought by any "insured".

Notwithstanding the foregoing, if the "insured" agrees with the Insurer to use "mediation" to successfully resolve any "claim" for which "legal defense expenses" have been incurred, then the "self-insured retention" applicable to the "pollution condition"  that corresponds to such "claim" shall be reduced by fifty percent (50%), subject to a maximum reduction in the "self-insured retention" of twenty-five thousand dollars ($25,000).

It is expressly agreed that the Insurer's obligation to pay for any covered "business interruption loss" pursuant to this Policy shall attach to the Insurer only after the relevant "insured" has itself borne the full amount of the "business interruption loss" within the Deductible Period identified in Item **4.b.** of the Declarations to this Policy.

**II.**     Section **V., DEFINITIONS** of this Policy is hereby amended by addition of  the following:

**"Mediation"** means a conciliatory, non-binding attempt to resolve a "claim" using a neutral, third-party facilitator.

All other terms and conditions of this Policy remain unchanged.

_____
                               Authorized Representative

**ASBESTOS AND/OR LEAD-BASED PAINT COVERAGE (BODILY INJURY, PROPERTY DAMAGE AND REMEDIATION COSTS FOR INADVERTENT DISTURBANCE ONLY) ENDORSEMENT (HC PPL)**

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>019 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

<small>Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.</small>

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

<u>Solely to the extent that there is an **X** indicated in either Section **I.** or Section **II.** of this Endorsement, below</u>, the "insured" and the Insurer hereby agree to the following corresponding changes to this Policy:

**I.** ☒ Section **VI.**, **EXCLUSIONS,** Subsection **A.**, **Asbestos**, of this Policy is hereby deleted in its entirety and replaced with the following:

    **A. Asbestos**

    Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response costs" or "legal defense expenses", arising out of or related to asbestos or asbestos-containing materials.

    This exclusion shall not apply to:

    **1.** Third-party "claims" for "bodily injury" and associated "legal defense expenses" arising out of asbestos or asbestos-containing materials;

    **2.** Third-party, non-governmental "claims" for "property damage" and associated "legal defense expenses" arising out of asbestos or asbestos-containing materials;

    **3.** "Remediation costs" arising out of asbestos or asbestos-containing materials discovered in soil or groundwater; and

    **4.** "Remediation costs" arising out of asbestos or asbestos-containing materials, provided such "remediation costs" are the result of a "pollution condition" that:

        **a.** First commenced during the "policy period"; and

        **b.** Does not arise out of or relate to any "pollution conditions" which existed prior to the inception of this Policy; and

        **c.** Is unintended and unexpected from the standpoint of the "insured"; and

        **d.** Is sudden, direct, and immediate.

    <u>Notwithstanding any reporting obligations contained in Section **I., INSURING AGREEMENTS**, or Section **VII., REPORTING AND COOPERATION**, of this Policy, generally, it is a condition precedent to coverage pursuant to this Exception **4.** that the "insured" also provide conclusive documentation of strict compliance with requirements **a.** through **d.**, above, regardless of whether the Insurer was prejudiced by the failure to meet these requirements.</u>

    Notwithstanding anything stated in this Exception **4.**, above, coverage is not afforded pursuant to this Policy for "remediation costs" arising out of or related to asbestos or asbestos-containing material abatement, removal, or disposal, resulting from, in whole or in part, the maintenance, renovation, or physical improvement of a "covered location" where asbestos or asbestos-containing material was known to be present by a "responsible person".

**II.** ☒ Section **VI.**, **EXCLUSIONS**, Subsection **M.**, **Lead-Based Paint**,  of this Policy is hereby deleted in its entirety and replaced with the following:

**M. Lead-Based Paint**

Claims", "remediation costs", "business interruption loss", "decontamination costs", "catastrophe management costs", "emergency response costs" or "legal defense expenses", arising out of or related to lead-based paint.

This exclusion shall not apply to:

**1.** Third-party "claims" for "bodily injury" and associated "legal defense expenses" arising out of lead-based paint;

**2.** Third-party, non-governmental "claims" for "property damage" and arising out of lead-based paint;

**3.** "Remediation costs" arising out of lead-based paint discovered in soil or groundwater; and

**4.** "Remediation costs" arising out of lead-based paint, provided such "remediation costs" are the result of a "pollution condition" that:

    **a.** First commenced during the "policy period"; and

    **b.** Does not arise out of or relate to any "pollution conditions" which existed prior to the inception of this Policy; and

    **c.** Is unintended and unexpected from the standpoint of the "insured"; and

    **d.** Is sudden, direct, and immediate.

    <u>Notwithstanding any reporting obligations contained in Section **I., INSURING AGREEMENTS**, or Section **VII., REPORTING AND COOPERATION**, of this Policy, generally, it is a condition precedent to coverage pursuant to this Exception **4.** that the "insured" also provide conclusive documentation of strict compliance with requirements **a.** through **d.**, above, regardless of whether the Insurer was prejudiced by the failure to meet these requirements.</u>

Notwithstanding anything stated in this Exception **4.**, above, coverage is not afforded pursuant to this Policy for "remediation costs" arising out of or related to lead-based paint abatement, removal, or disposal, resulting from, in whole or in part, the maintenance, renovation, or physical improvement of a "covered location" where lead-based paint was known to be present by a "responsible person".

**III.** <u>Aggregate Sublimit of Liability</u> ( ☐ Not applicable if **X** indicated herein)

**$10,000,000** shall be the Aggregate Sublimit of Liability for the coverage afforded pursuant to Exception **4.**, of each exclusion above (as applicable). Therefore, this Aggregate Sublimit of Liability shall be the maximum amount the Insurer shall pay for all "remediation costs" arising out of or related to asbestos, asbestos-containing materials and/or lead-based paint. This Aggregate Sublimit of Liability shall be subject to the Limits of Liability identified in the Declarations to this Policy. Under no circumstance shall the Insurer be liable to pay any amount in excess of any applicable Limit of Liability.

All other terms and conditions of this Policy remain unchanged.

_____
                              Authorized Representative

## RESPONSIBLE INSURED AMENDATORY ENDORSEMENT

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>020 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **V., DEFINITIONS**, Subsection **SS.**, of this Policy is hereby deleted in its entirety and replaced with the following:

SS.   **"Responsible person"** means the Chief Risk Officer, or General Counsel of the "named insured" and solely with respect to Intentional Non-Compliance or Known Conditions exclusions, the President, CEO, Sr. Vice President, Chief Development Officer or the Executive Committee of the Board of Trustees of the "first named insured".

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

MANU 206198.3  (04/17)

## AUTOMATIC ACQUISITION AND DUE DILIGENCE (FUNGI - NO LEASE/OPS DUE DILIGENCE) ENDORSEMENT

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>021 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **IX., GENERAL CONDITIONS,** of this Policy is hereby amended by addition of  the following:

**Automatic Acquisition and Due Diligence**

1.  It is understood and agreed that, for an additional premium amount, any property acquired, leased, managed, operated or maintained by a "named insured" during the "policy period" shall be added to the Policy as a "covered location" upon the closing date of such acquisition or the effective date of such lease, management, operation, or maintenance right or obligation (collectively Property Arrangement), respectively; provided that the Insurer receives written notice of the property acquisition or the Property Arrangement within **1)** ninety (90) days of closing date of such acquisition or the effective date of the Property Arrangement for Hospital/Long-Term Care facilities, or **2)** one hundred and eighty (180) days of closing date of such acquisition or the effective date of such Property Arrangement for all other facilities, respectively, and, with respect to property acquisitions, <u>only</u>, the "named insured" completes the following environmental due diligence assessment of the property prior to such acquisition:

    a.  The "named insured" commissions and receives:

        1)  A Phase I Environmental Site Assessment report  on the property that is performed by a qualified environmental consultant in accordance with the ASTM Standard for Environmental Site Assessments: Phase I Environmental Site Assessment Process in effect as of the inception of this Policy; and

        2)  A Baseline Survey Process Report in accordance with the ASTM Standard Guide for Readily Observable Mold and Conditions Conducive to Mold in Commercial Buildings: Baseline Survey Process in effect as of the inception of this Policy; or

    b.  The "named insured" receives:

        1)  A Phase I Environmental Site Assessment report on the property that has been conducted by a qualified environmental consultant for a third-party, provided that the assessment and related report are prepared in accordance with the ASTM Standard for Environmental Site Assessments: Phase I Environmental Site Assessment Process in effect as of the inception of this Policy; and

        2)  A Baseline Survey Process Report on the property that has been conducted by a qualified environmental consultant for a third-party, provided that the assessment and related report are prepared in accordance with the ASTM Standard Guide for Readily Observable Mold and Conditions Conducive to Mold in Commercial Buildings: Baseline Survey Process  in effect as of the inception of this Policy,

        and that the consultant responsible for the reports has provided the "named insured" with written confirmation that the "named insured", as applicable, is entitled to rely on the conclusions of the reports as if the assessment had been performed on its behalf.

2.  If the Phase I Environmental Site Assessment does not identify any Recognized

Environmental Conditions, as defined by the ASTM Standard for Environmental Site Assessments: Phase I Environmental Site Assessment Process in effect as of the inception of this Policy (hereinafter RECs), and the Baseline Survey Process Report does not identify "fungi", *legionella pneumophila* or conditions conducive to the growth of "fungi" or *legionella pneumophila* (hereinafter Conducive Conditions) the property shall automatically be added to the Policy as an additional "covered location" effective on the date the "named insured" acquired the property.

3. If the Phase I Environmental Site Assessment identifies any RECs, then, before the property may be added to the Policy as a "covered location", the "named insured" must complete a Phase II Environmental Site Assessment. Thereafter, the Insurer shall have thirty (30) days to review and approve the Phase II Environmental Assessment report. Said approval shall not be unreasonably withheld, but the Insurer reserves the right to limit coverage with respect to any RECs identified at the property, and any "pollution conditions" identified during further investigation of such RECs. Upon such approval, the Insurer shall provide a written endorsement to the "first named insured" confirming the effective date that the property has been added to the Policy as an additional "covered location", and describing the extent of the coverage being afforded with respect to the RECs and associated "pollution conditions" identified at the property.

4. If the Baseline Survey Process Report identifies "fungi", *legionella pneumophila* or Conducive Conditions, then, before coverage may be afforded for any "pollution conditions" involving the presence of "fungi", *legionella penumophila* or other microbial-related conditions arising out of or related to Conducive Conditions, the "named insured" must complete additional assessment or remediation activities to address such "fungi", *legionella pneumophila* or Conducive Conditions. Thereafter, the Insurer shall have thirty (30) days to review and approve the results of the additional assessment and/or remediation activities. Said approval shall not be unreasonably withheld, but the Insurer reserves the right to limit coverage with respect to any "fungi", *legionella pneumophila* or Conducive Conditions identified at the property. Upon such approval, the Insurer shall provide a written endorsement to the "first named insured" confirming the effective date and extent of the coverage being afforded with respect to the "fungi", *legionella pneumophila* or Conducive Conditions identified at the property.

5. Any property first leased, managed, operated or maintained during the "policy period" by the "first named insured", or any "named insured" that is affiliated by ownership with the "first named insured", shall also automatically be added to the Policy as a "covered location" upon the effective date of any such lease. However, no coverage shall be afforded pursuant to this Policy for "pollution conditions" on, at, under, or migrating from such "covered location", which first commenced, in whole or in part, prior to the effective date of such lease agreement.

6. Any property first acquired during the "policy period" by the "first named insured", or any "named insured" that is affiliated by ownership with the "first named insured", but does not follow the environmental due diligence assessment procedures outlined in Items **1.a.** and **1.b.** above, shall also automatically be added to the Policy as a "covered location" upon the effective date of any such acquisition. However, no coverage shall be afforded pursuant to this Policy for "pollution conditions" on, at, under, or migrating from such "covered location", which first commenced, in whole or in part, prior to the effective date of such acquisition.

7. Additional premium for "covered locations" added to this Policy pursuant to Paragraphs **1.** through **6.**, above, shall be calculated using the following rates:

### Additional Premium Schedule – Owned Locations

| Acquired Property Type | Additional Premium |
|---|---|
| Non-medical Office | $0.010 per square foot |
| Outpatient Office | $0.012 per square foot |
| Residential | $0.020 per square foot |

| Hospital/Long-Term Care | $0.014 per square foot |
|---|---|
| Subject to a minimum premium of $1,000 ||

**Additional Premium Schedule – Non-Owned Locations**

| Acquired Property Type | Additional Premium |
|---|---|
| Non-medical Office | **No Additional Premium if property is leased, managed, operated or maintained <u>and</u> not owned** |
| Outpatient Office | |
| Residential | |
| Hospital/Long-Term Care | |

<u>In the event a property of a type not described in the Additional Premium Schedule, above, is acquired or leased by a "named insured", the terms and conditions of this Subsection shall not apply.</u>

All other terms and conditions of this Policy remain unchanged.

_____
                                                    Authorized Representative

## NON-CERTIFIED ACTS OF TERRORISM COVERAGE ENDORSEMENT

| Named Insured<br>Northwell Health, Inc. | Endorsement Number<br>022 |
|---|---|

| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
|---|---|---|---|

| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company |
|---|

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **V.**, **DEFINITIONS**, Subsection **VV.**, of this Policy is hereby deleted in its entirety and replaced by the following:

VV. **"Terrorism"** means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002, as extended by the Terrorism Risk Insurance Program Reauthorization Act of 2015 **("TRIA")**.   TRIA currently sets forth the following criteria for a certified act of terrorism:

1. The act resulted in insured losses in excess of $5 million attributable to all types of insurance subject to TRIA; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

II.  Section **V.**, **DEFINITIONS**, of this Policy is hereby amended by addition of the following:

**"Non-Certified Acts of Terrorism"** means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology,

provided that such activities do not involve an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002, as extended by the Terrorism Risk Insurance Program Reauthorization Act of 2015 **("TRIA")**.

III.  Aggregate Sublimit of Liability (Biological, Chemical, Radiological and  Nuclear Explosions)

*Non-Certified Acts of Terrorism Aggregate Sublimit of Liability (All Pollution Conditions)*: **$20,000,000**

The Aggregate Sublimit of Liability, above, shall be applicable to any coverage afforded pursuant to this Endorsement.  Therefore, this Aggregate Sublimit of Liability shall be the maximum amount the Insurer shall pay for all:

☒ "emergency response costs";

☒ "business interruption loss"; *

☐ "diminution in value"; *

☒ "rental income"; *

☒ "catastrophe management costs"; *

☒ "remediation costs";

☒ "claims"

☒ "decontamination costs"

> *to the extent applicable due to such Supplemental Coverage being added to this Policy by endorsement hereto.*

and associated "legal defense expense" arising out of "pollution conditions" based upon, arising out of, or attributable to, whether directly or indirectly, "non-certified acts of terrorism" that involve a biological, chemical, radiological or nuclear explosion resulting in a "pollution condition" to which this insurance applies. This Aggregate Sublimit of Liability shall be subject to the Limits of Liability identified in the Declarations to this Policy or any endorsement attached hereto.  Under no circumstance shall the Insurer be liable to pay any amount in excess of any applicable Limits of Liability.

If this "policy period" extends beyond December 31, 2020, please note that the Insurer's agreement to provide the coverage contemplated in this Endorsement is premised on the parties' assumption that TRIA will later be extended through the end of the "policy period".  In the event that TRIA is not extended beyond December 31, 2020, or otherwise expires at some point during the "policy "period": **1)** the Insurer will refund the unearned portion of the **$9,298**  in  premium attributable specifically to this Endorsement to the "first named insured" on a pro-rata basis; and **2)** the coverage afforded pursuant to this Endorsement will expire and the definition of "terrorism" modified in Section **I.**, above, will revert to the basic definition in the policy form to which this Endorsement is attached for all "pollution conditions" that first commence on or after that date.  In the event that new TRIA extension or replacement legislation is enacted requiring the Insurer to offer coverage for terrorism that is materially different than the coverage requirements included in the current version of TRIA that expires on December 31, 2020, the Insurer reserves the right to re-price and prospectively modify the terrorism coverage herein to track its perception of terrorism risk both within and without the scope of any revised or replacement government terrorism support program.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>023 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act.  The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% for year 2015, 84% beginning on January 2016; 83% beginning on January 1 2017, 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year  and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Terrorism Risk Insurance Act premium: $ 9,298 .

_____
                                    Authorized Representative

## SERVICE OF SUIT ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Northwell Health, Inc. | 024 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| HPI | G27376939 002 | 04/25/2017  to  04/25/2020 | 04/25/2017 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Information about service of suits upon the company is given below. Service of process of suits against the company may be made upon the following person, or another person the company may designate:

> Mr. Paul Bech, Esq., Assistant General Counsel
> Chubb
> 436 Walnut Street
> Philadelphia, PA 19106-3703

The person named above is authorized and directed to accept service of process on the company's behalf in any action, suit or proceeding instituted against the company. If the insured requests, the company will give the insured a written promise that a general appearance will be entered on the company's behalf if a suit is brought.

If the insured requests, the company will submit to the jurisdiction of any court of competent jurisdiction. The company will accept the final decision of that court or any Appellate Court in the event of an appeal.  However, nothing in this endorsement constitutes a waiver of the company's right to: remove an action to a United States District Court, seek a transfer of a case to another court, or to enforce policy provisions governing choice of law or venue selection, as may be permitted by the laws of the United States, or of any state in the United States.

The law of some jurisdictions of the United States of America requires that the Superintendent, Commissioner or Director of Insurance (or their successor in office) be designated as the company's agent for service of process. In these jurisdictions, the company designates the Director of Insurance as the company's true and lawful attorney upon whom service of process on the company's behalf may be made. The company also authorizes the Director of Insurance to mail process received on the company's behalf to the company person named above.

If the insured is a resident of Canada, the insured may also serve suit upon the company by serving the government official designated by the law of the insured's province.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

_____
Authorized Representative

# TERRORISM RISK INSURANCE ACT ENDORSEMENT

| Named Insured Northwell Health, Inc. | | | Endorsement Number 025 |
|---|---|---|---|
| Policy Symbol HPI | Policy Number G27376939 002 | Policy Period 04/25/2017  to  04/25/2020 | Effective Date of Endorsement 04/25/2017 |
| Issued By (Name of Insurance Company) Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Terrorism Premium (Certified Acts of Terrorism): **$ 9,298**

In consideration of the additional premium indicated above, which is included in the Premium as listed on the Declarations, the "insured" and the Insurer, hereby agree to the following Policy change(s):

**A.** With respect to any "hostile acts" or "terrorism" exclusions contained in this Policy, or attached to this Policy by endorsement, such exclusions do not apply to a "certified act of terrorism", as defined in Paragraph **C.**, below.

**B.** With respect to any one or more "certified acts of terrorism", the Insurer will not pay any amounts for which the Insurer is not responsible under the terms of the federal Terrorism Risk Insurance Act **("TRIA")**, due to the application of any clause which results in a cap on the Insurer's liability for payments for terrorism losses.

**C.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to TRIA. The criteria contained TRIA for a "certified act of terrorism" include the following:

  **1.** The act resulted in insured losses in excess of $5 million attributable to all types of insurance subject to TRIA; and

  **2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**D.** Notwithstanding any coverage that may otherwise be afforded for punitive damages under this Policy, if any, coverage shall not be afforded for damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**E.** The coverage afforded under this endorsement shall expire at the earlier of the following dates:

  **1.** The end of the "policy period", as indicated on the Declarations; or

  **2.** <u>**December 31, 2020**</u>.

**F**.   The premium for "certified acts of terrorism" coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in TRIA. The federal program established by TRIA is scheduled to terminate at the end of December 31, 2020, unless extended by the federal government.

**G**.   If this "policy period" extends beyond December 31, 2020, please note that the TRIA premium, above, is premised on the parties' assumption that TRIA will later be extended  through the end of the "policy period", thereby mandating that Insurer make available coverage for "certified acts of terrorism" for the entire "policy period".  In the event that TRIA is not extended beyond December 31, 2020, or otherwise expires at some point during the "policy "period", the Insurer will refund the unearned portion of our TRIA premium to the insured on a pro-rata basis.  In the event that new TRIA extension or replacement legislation is enacted requiring the Insurer to offer coverage for terrorism that is materially different than the coverage requirements included in the current version of TRIA that expires on December 31, 2020, the Insurer reserves the right to re-price and prospectively modify terrorism coverage to conform with the statutory requirements and risks presented by any such new legislation.

All other terms and conditions of the policy remain unchanged.

_____
                                                              Authorized Representative

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>026 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of the policy remain unchanged.

_____
Authorized Representative

# SIGNATURES

| Named Insured<br>Northwell Health, Inc. | | | Endorsement Number<br>027 |
|---|---|---|---|
| Policy Symbol<br>HPI | Policy Number<br>G27376939 002 | Policy Period<br>04/25/2017  to  04/25/2020 | Effective Date of Endorsement<br>04/25/2017 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**ILLINOIS UNION INSURANCE COMPANY** (A stock company)

525 W. Monroe Street, Suite 400, Chicago, Illinois 60661

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY** (A stock company)

Royal Centre Two, 11575 Great Oaks Way, Suite 200, Alpharetta, GA 30022

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

Authorized Representative

Chubb. Insured.℠

**CHUBB**®

[X] Illinois Union Insurance  Company

[ ] Westchester Surplus Lines Insurance Company

[ ]  _

Insured:
Northwell Health, Inc.

Attached To Policy No.:  HPI G27376939 002

Effective Date:  04/25/2017

---

## NEW YORK SURPLUS LINES NOTIFICATION

THE INSURER NAMED HEREIN IS NOT LICENSED BY THE STATE OF NEW YORK, NOT SUBJECT TO ITS SUPERVISION, AND IN THE EVENT OF THE INSOLVENCY OF THE INSURER, NOT PROTECTED BY THE NEW YORK SECURITY FUNDS.  THE POLICY MAY NOT BE SUBJECT TO ALL OF THE REGULATIONS OF THE DEPARTMENT OF FINANCIAL SERVICES PERTAINING TO POLICY FORMS.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS NOTICE IS ATTACHED OTHER THAN AS STATED ABOVE.

SL-24693 (Ed. 12/11)



**Chubb Producer Compensation
Practices & Policies**

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.chubbproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.