# EXHIBIT 2

CHUBB North American Claims - Environmental  
10 Exchange Place  
Jersey City, NJ 07302

201-356-5317 *tel*

Yvette.Nadgir@chubb.com

**Yvette Nadgir**  
Claim Director

May 20, 2020

**CHUBB**

**VIA E-MAIL & CERTIFIED MAIL**  
Maggie Emma  
Assistant Vice President, Risk Management  
Northwell Health, Inc.  
1111 Marcus Avenue, Suite LL26  
New Hyde Park, NY 11042

| | | |
|---|---|---|
| RE: | Named Insured: | Northwell Health, Inc. |
| | Loss Location: | Not Specified |
| | Date of Loss: | April 7, 2020 |
| | Claim: | COVID-19 Losses |
| | Policy No.: | HPI G27376939 002 |
| | Claim No. : | KY20K2288946 |

Dear Ms. Emma:

Illinois Union Insurance Company ("Chubb") further acknowledges receipt of your April 7, 2020 correspondence. This letter is directed to you as the authorized representative of Northwell Health, Inc. ("Northwell" or the "Insured"). Regretfully, the purpose of this letter is to advise that coverage is not available for the referenced Claim under the referenced Policy for the reasons set forth herein.

**The Claim**

Your April 7, 2020 correspondence provided the following details concerning the Claim:

> Northwell has suffered, and will continue to suffer, loss, expense, and/or damage covered under this Policy, including, but not limited to, first-party emergency response coverage, decontamination costs, and catastrophe management costs. The scope and extent of covered loss, expense, and/or damage that will result from these circumstances is not yet known. Once determined, we request that Chubb provide coverage for its loss, expense and/or damage. We will advise you further when more information is available.

At this time, we have not been provided with further information regarding this Claim.

**The Policy**

Illinois Union Insurance Company issued to Northwell Healthcare Premises Pollution Liability Insurance Policy number HPI G27376939 002 for the period of April 25, 2017 to April 25, 2020 (the "Policy"). The Policy is subject to limits of liability of $20M per pollution condition or facility-borne illness event and $20M in the aggregate. The Policy is subject to a $500,000 self-insured retention per pollution condition or facility-borne

illness event and a 3 day deductible period for all "business interruption loss" arising from the same pollution condition. The Policy also contains a $20M Decontamination Costs Aggregate Sublimit of Liability for all facility-borne illness events (*End. 5*).

Subject to all of its terms, conditions, limitations, and exclusions, the Policy provides coverage for "loss" in excess of the "self-insured retention" arising out of a "pollution condition" or a "facility-borne illness event" at a "covered location". Although Chubb is relying on the entire contents of the Policy in informing you regarding coverage, Chubb specifically directs your attention to the following terms, definitions, conditions, and exclusions contained in the Policy.

Coverage A states, in pertinent part, that it will provide coverage for:

> "Remediation costs" and associated "legal defense expenses", in excess of the "self-insured retention", arising out of a "pollution condition" on, at, under, or migrating from a "covered location", provided that the "insured" first discovers such "pollution condition" during the "policy period".

(Section I.A.).

Coverage B states, in pertinent part, that it will provide coverage for:

> "Emergency response costs", in excess of the "self-insured retention", arising out of a "pollution condition" or "facility-borne illness event", provided that the "insured" first discovers such "pollution condition" or "facility-borne illness event" during the "policy period".

(Section I.B.).

Coverage D states, in pertinent part, that it will provide coverage for:

> "Decontamination costs" incurred by an "insured", in excess of the "self-insured retention", arising out of a "facility borne illness event", at a "covered location", provided that the "insured" first discovers such "facility borne illness event" during the "policy period".

(Section I.D.).

Coverage E states, in pertinent part, that it will provide coverage for:

> "Business interruption loss" incurred by an "insured" during a "period of interruption" in excess of the Deductible Period identified in Item 4.b. of the Declarations to this Policy. The coverage afforded pursuant to this Coverage E. only applies to "business interruption loss" that:
>
> 1.   Is directly attributable to a "covered pollution condition"; and
>
> 2.   Is reported to the Insurer, in writing, as soon as practicable, and during the "policy period".

(Section I.E.).

Coverage F states, in pertinent part, that it will provide coverage for:



"Catastrophe management costs", in excess of the "self-insured retention", arising out of a "catastrophe management event". Any such "catastrophe management event" must be reported to the Insurer, in writing, during the "policy period".

(Section I.F.).

The Policy provides, in pertinent part, that Coverages A., B., D. and F., where applicable, cover "loss" in excess to the applicable "self-insured retention", as follows:

> [T]he Insurer's obligation to pay for any covered "claims", "remediation costs", "emergency response costs", "decontamination costs", "catastrophe management costs" or "legal defense expense" pursuant to this Policy shall attach to the Insurer only after the "first named insured" has paid, or has provided evidence to the Insurer that another "named insured" has paid, the full amount of the "self-insured retention" with respect to any covered "pollution condition" or "facility-borne illness event".
>
> One "self-insured retention" shall apply to all "claims", "remediation costs", "emergency response costs", "decontamination costs", "catastrophe management costs" and "legal defense expense" arising out of the same, continuous, repeated, or related "pollution condition" or "facility-borne illness event".

(Section II, A and B).

The Policy further provides, in pertinent part, that Coverage E., where applicable, covers "business interruption loss" in excess to the applicable Deductible Period as follows:

> [T]he Insurer's obligation to pay for any covered "business interruption loss" pursuant to this Policy shall attach to the Insurer only after the relevant "insured" has itself borne the full amount of the "business interruption loss" within the Deductible Period identified in Item 4.b. of the Declarations to this Policy.
>
> One Deductible Period shall apply to all "business interruption loss" arising out of the same, continuous, repeated, or related "covered pollution condition"

(Section II., A. and C.).

Certain key definitions in the Policy state, in pertinent part:

> **"Business interruption"** means necessary partial or complete suspension of the "insured's" operations at a "covered location" arising from a "covered pollution condition".
>
> **"Business interruption loss"** means:
>
> 1.   "Business income";
>
> 2.   "Extra expense"; and
>
> 3.   "Delay expense".
>
> **"Catastrophe management costs"** means reasonable and necessary expenses approved by the Insurer, in writing, except in the event of an "emergency response", which have been incurred

3

3.  To secure the scene of a "catastrophe management event"

**"Catastrophe management event"** means a "pollution condition" or a "facility-borne illness event" ….

**"Covered pollution condition"** means a "pollution condition" on, at or under a "covered location" for which coverage is otherwise afforded pursuant to this Policy pursuant to Coverages **A**. or **B**., only, for "remediation costs" resulting from the first-party discovery of such "pollution condition".

**"Decontamination costs"** means reasonable and necessary expenses incurred within thirty (30) calendar days of the discovery of a "facility-borne illness event" to clean and disinfect a "covered location" due to a "facility-borne illness event" to the extent required by "environmental laws".

**"Emergency response costs"** means "remediation costs" or "decontamination costs, as applicable, incurred within seventy-two (72) hours following the discovery of a "pollution condition" or "facility borne illness event" by an "insured" in order to abate or respond to an imminent and substantial threat to human health or the environment arising out of:

1.  A "pollution condition" on, at, under or migrating from a "covered location";

2.  A "pollution condition" resulting from "covered operations" or "transportation"; or

3.  A "facility-borne illness event".

**"Environmental law"** means any federal, state, commonwealth, municipal or other local law, statute, directive, ordinance, rule, guidance document, regulation, and all amendments thereto, including voluntary cleanup or risk-based corrective action guidance, governing the liability or responsibilities of the "insured" with respect to a "pollution condition" or "facility borne illness event".

**"Facility-borne illness event"** means the presence of a facility-borne infectious virus, bacteria or disease at a "covered location"; provided that such facility-borne infectious virus, bacteria or disease is not:

1.  Naturally occurring in the environment in amounts and concentrations discovered at the "covered location"; and

2.  Solely or exclusively the result of communicability through human-to-human contact.

**"Pollution condition"** means:

**1.**  The presence of "fungi" or *legionella pneumophila*;

**3.**  The discharge, dispersal, release, escape, migration, or seepage of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including smoke, soot, vapors, fumes, acids, alkalis, chemicals, hazardous substances, hazardous materials, or waste materials, on, in, into, or upon land and structures thereupon, the atmosphere, surface water, or groundwater.

4

> For the purpose of this definition, waste materials include, but are not limited to, "low-level radioactive waste", "mixed waste" and medical, red bag, infectious or pathological wastes
>
> **"Remediation costs"** (*as amended by the Restoration Costs Amendatory (Green Materials) Endorsement (HC PPL)*) means reasonable expenses incurred to investigate, quantify, monitor, mitigate, abate, remove, dispose, treat, neutralize, or immobilize "pollution conditions" to the extent required by "environmental law" in the jurisdiction of such "pollution conditions".

The Policy further provides, in pertinent part, that the insured must obtain Chubb's consent before incurring "remediation costs":

> No "insured" shall make or authorize an admission of liability or attempt to settle or otherwise dispose of any "claim", without the written consent of the Insurer. Nor shall any "insured" retain any consultants or "catastrophe management firms", or incur any "remediation costs" or "catastrophe management costs", without the prior express written consent of the Insurer, except in the event of an "emergency response".

(Section VII.C.).

**Coverage Position**

As an initial matter, the Policy's "self-insured retention" is $500,000 per "pollution condition" or "facility-borne illness event." By *Endorsement 2*, there is a $2,000,000 aggregate self-insured retention, followed by a $50,000 maintenance self-insured retention per "pollution condition" or "facility-borne illness event" upon exhaustion of the aggregate self-insured retention. In addition, the Policy's deductible period is 3 days. One "self-insured retention" applies to all "claims", "remediation costs", "emergency response costs", "decontamination costs", "catastrophe management costs" and "legal defense expense" arising out of the same, continuous, repeated, or related "pollution condition" or "facility-borne illness event". One deductible period applies to all "business interruption loss" arising out of the same, continuous, repeated, or related "covered pollution condition". Chubb shall have no duties under the Policy until the applicable "self-insured retentions" have been fully satisfied and/or the deductible period has passed with respect to all "business interruption loss" arising from each "covered pollution condition" and all rights are reserved in this regard.

Coverage A. provides coverage for "remediation costs" and associated "legal defense expenses" arising out of a "pollution condition" on, at under, or migrating from a "covered location". Coverage B. provides coverage for "emergency response costs" arising out of a "pollution condition" or "facility-borne illness event". Coverage D. provides coverage for "decontamination costs" incurred by an "insured" arising out of a "facility-borne illness event" at a "covered location". Coverage E. provides coverage for "business interruption loss" that is directly attributable to a "covered pollution condition".
Coverage F. provides coverage for "catastrophe management costs" that arise out of a "pollution condition" or "facility-borne illness event".

This claim does not involve a "pollution condition" or a "facility-borne illness event" because COVID-19 does not come within the definition of either "pollution condition" or "facility-borne illness event" as those terms are used in the Policy. In addition, the claim does not involve a "pollution condition" on, at, under or migrating from a "covered location"; or an "facility-borne illness event" at a "covered location".

5

With respect to the definition of "pollution condition", the word virus is absent because coverage for a virus is not encompassed by this term. The term "pollution condition" is defined by words that denote and are synonymous with environmental pollution. COVID-19 is an infectious communicable disease caused by a virus, not pollution.

Nor does this Claim involve a "facility-borne illness event". A "facility-borne illness" means an infection, virus, bacteria, or disease that is generated in the facility itself, not an infection, virus, bacteria or disease that is brought into the facility by an employee who is ill. Additionally, based on CDC and OSHA documentation, the COVID-19 virus is spread from person-to-person, including: between people who are in close contact with one another (within about 6 feet) and through respiratory droplets produced when an infected person coughs or sneezes. Based on this information, the COVID-19 virus is communicable through human-to-human contact. Accordingly, the COVID-19 virus does not meet the definition requirements of "facility-borne illness event" in the Policy as outlined above.

The Policy does not cover the claimed loss related to COVID-19 as it does not give rise to a "pollution condition" or "facility-borne illness event" under the Policy. Accordingly, Chubb must regretfully deny coverage pursuant to the Insuring Agreement for Coverages A., B., D., E., and F., and the definitions of "pollution condition" and "facility-borne illness event."

To the extent that the Claim is intended to claim "remediation costs" under Coverage A., "remediation costs" means reasonable expenses incurred to investigate, quantify, monitor, mitigate, abate, remove, dispose, treat, neutralize, or immobilize "pollution conditions" to the extent required by "environmental law" in the jurisdiction of such "pollution conditions". Since COVID-19 does not come within the definition of "pollution condition" as that term is used in the Policy, there is no coverage for any claimed "remediation costs". Chubb also reserves all rights based on the definitions of "remediation costs" and any related terms.

To the extent that the Claim is intended to claim "emergency response costs" under Coverage B., "emergency response costs" means "remediation costs" or "decontamination costs, as applicable, incurred within 72 hours following the discovery of a "pollution condition" or "facility borne illness event" by an "insured" in order to abate or respond to an imminent and substantial threat to human health or the environment arising out of either a "pollution condition" or "facility-borne illness event". Since COVID-19 does not come within the definition of either "pollution condition" or "facility-borne illness event" as those terms are used in the Policy, there is no coverage for any claimed "emergency response costs". Chubb also reserves all rights based on the definitions of "emergency response costs" and any related terms.

To the extent that the Claim is intended to claim "decontamination costs" under Coverage D., "decontamination costs" means reasonable and necessary expenses incurred within 30 calendar days of the discovery of a "facility-borne illness event" to clean and disinfect a "covered location" due to a "facility-borne illness event" to the extent required by "environmental laws". Since COVID-19 does not come within the definition of "facility-borne illness event" as that term is used in the Policy, there is no coverage for any claimed "decontamination costs". Chubb also reserves all rights based on the definitions of "decontamination costs" and any related terms.

To the extent that the Claim is intended to claim "business interruption loss" under Coverage E., "business interruption" means necessary partial or complete suspension of

the "insured's" operations at a "covered location" arising from a "covered pollution condition". Since COVID-19 does not come within the definition of "pollution condition" as that term is used in the Policy, there is no coverage for any claimed "business interruption loss". Chubb also reserves all rights based on the definitions of "business interruption loss" and "business interruption" any related terms.

To the extent that the Claim is intended to claim "catastrophe management costs" under Coverage F., "catastrophe management costs" means in, relevant part, reasonable and necessary expenses approved by the Insurer, in writing, except in the event of an "emergency response", which have been incurred to secure the scene of a "catastrophe management event". A "catastrophe management event" necessarily involves either a "pollution condition" or a "facility-borne illness event". Since COVID-19 does not come within the definition of either "pollution condition" or "facility-borne illness event" as those terms are used in the Policy, there is no coverage for any claimed "catastrophe management costs". Chubb also reserves all rights based on the definitions of "catastrophe management costs" and "catastrophe management event" any related terms.

Finally, we note the following potentially applicable exclusions and conditions. This insurance does not apply to "loss" arising out of or related to Contractual Liability (*Sec. VI.B.*), Employers Liability (*Sec. VI.D.*), First-Party Property Damage (*Sec. VI.G.*), Insured's Internal Expenses (*Sec. VI.I.*), or Workers Compensation (*Sec. VI.W.*) and Chubb reserves the right to limit or deny coverage based on the above conditions and exclusions. Please also note that per the Policy, no Insured should, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without Chubb's written consent. (S*ec. VII.C.*).

Notwithstanding the above, should Northwell wish to submit additional information concerning this claim, please comply with the notice requirements contained in Section VII.A. of the Policy. This includes notifying Chubb of the claim as soon as practicable, and providing the Insurer with reasonably detailed information as to the nature thereof and any steps undertaken by the Insured to respond to the claim. Such information includes the identity of the "covered location(s)" and the "remediation costs" claimed.

**Conclusion**

In light of the foregoing, Chubb respectfully disclaims coverage under the Policy and for the reasons discussed above, Chubb has determined that it has no obligation to defend, indemnify or reimburse you or any other party in connection with this matter. The foregoing is without prejudice to Chubb's rights pursuant to the terms, conditions, provisions, and exclusions of the Policy. Chubb reserves the right to assert any other coverage or Policy defense that may now be applicable, or is later determined to be applicable upon further information provided. No act of any agent, servant, or employee of Chubb, including its attorneys, shall constitute a waiver or estoppel with respect to these rights.

Please note that Chubb's coverage position discussed herein is based upon the facts in this matter, as we now know them. This being said, Chubb welcomes any additional information from the insured with respect to this matter. In this connection, I ask that you please direct all responses to this letter to my attention. Please note that we work in a paperless environment. Please send any documentation and correspondence to:

Chubb North America Claims
Yvette Nadgir, KY20K2288946
PO Box 5122

7

Scranton, PA 18505-0554

It is extremely important that the cover page of your correspondence and all attached documentation conspicuously display the claim file number so that all papers can be scanned and electronically attached to the claim file.

Should you wish to take this matter up with the New York State Department of Financial Services, you may file with the Department either on its website at: HTTP://WWW.DFS.NY.GOV/CONSUMER/FILEACOMPLAINT.HTM or you may write to or visit the Consumer Assistance Unit, Financial Frauds and Consumer Protection Division, New York State Department of Financial Services, at: 25 Beaver Street, New York, NY 10004; One Commerce Plaza, Albany, NY 12257; 163B Mineola Boulevard, Mineola, NY 11501; or Walter J. Mahoney Office Building, 65 Court Street, Buffalo, NY 14202.

Should you have any questions concerning Chubb's coverage determination, please feel free to contact me at: 201-356-5317.

Very truly yours,

*Yvette Nadgir*

Yvette Nadgir
Claim Director


cc:     Richard Colantuono [Richard.Colantuono@marsh.com]